# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARK LEEMAN**
Leeman Law Offices
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana



FILED

Dec 05 2012, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRET LEE SISSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 09A02-1102-CR-199 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Thomas C. Perrone, Judge
Cause No. 09D02-0909-FB-23

**December 5, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Brett Lee Sisson appeals following his convictions for Burglary[1] as a class B felony, Receiving Stolen Property[2] as a class D felony, and Unlawful Possession of a Firearm by a Serious Violent Felon[3] (SVF) as a Class B felony, and his adjudication as a Habitual Offender.[4] Sisson raises the following restated issues for our review:

1. Did fundamental error occur when the State refiled the previously dismissed SVF charge and habitual offender allegation after Sisson's first trial ended in a mistrial due to jury deadlock?

2. Did the State's failure to respond to Sisson's notice of alibi by narrowing the time period during which the offense was alleged to have occurred constitute a violation of the alibi statute?

3. Did the trial court abuse its discretion by denying Sisson's motion to exclude evidence due to alleged discovery violations by the State?

4. Did the trial court abuse its discretion by admitting evidence that Sisson had threatened a witness for the State?

5. Did the trial court abuse its discretion by excluding evidence of a witness's prior criminal convictions?

6. Did the trial court err in denying Sisson's motion for change of judge for sentencing purposes only?

We affirm.

One evening in late May or early June of 2009, Sisson and Belinda Myers drove to the Cass County home of Judith and Richard Baber. Sisson parked near the home and told Myers to honk the horn if she saw anyone approaching. Sisson then walked away in the

---

[1] Ind. Code Ann. § 35-43-2-1 (West, Westlaw current through 2012 Second Regular Session).

[2] Ind. Code Ann. § 35-42-4-2 (West, Westlaw current through 2012 Second Regular Session).

[3] Ind. Code Ann. § 35-47-4-5 (West, Westlaw current through 2012 Second Regular Session).

[4] Ind. Code Ann. § 35-50-2-8 (West, Westlaw current through 2012 Second Regular Session).

direction of the Baber home. About ten minutes later, Sisson returned to the car and placed something in the trunk, and the two drove away.

Later that night, Sisson told Myers that they were going to Logansport to sell several guns that he had stolen from the Baber residence. The pair then drove to the home of Jack Sturdivant, who had sold marijuana to Sisson and Myers on previous occasions. Once there, Sisson removed something from the trunk of the car and went inside while Myers waited in the car. Upon entering the home, Sisson showed Sturdivant and Sturdivant's cousin, Mitchell DeFord, several guns. Sisson stated that the guns "were so hot that the people don't even know they are gone yet." *Transcript Vol. 13* at 385. Sturdivant gave Sisson marijuana and cash in exchange for the guns. Sturdivant subsequently gave one of the guns to Glen Pierce in an attempt to keep Pierce from reporting him to the police for his involvement in a prior burglary of Pierce's home.

On June 15, 2009, Sisson and Myers sold two items of jewelry—a man's ring with three stones and a two-piece wedding set—to Cashland in Lafayette. Two days later, on June 17, 2009, Sisson and Myers were arrested on unrelated charges, and they remained incarcerated for months. A few days after the arrest, Judith noticed that some jewelry was missing from her jewelry box, including her wedding set and Richard's ring, which had three stones and had been cut off of his finger. Judith mentioned the missing items to Richard, and the next day, Richard discovered that several guns were missing from his extensive gun collection. The Babers also discovered that a screen on a bedroom window was up and off track and that a vase near their front door was broken. The Babers notified police and an investigation ensued.

3

On September 23, 2009, Sisson was charged with burglary, theft, and receiving stolen property, and the State added an SVF charge on February 2, 2010. The State filed a habitual offender allegation on March 2, 2010, the day before Sisson's jury trial. On the same date, the State filed a motion to strike the habitual offender allegation because it was inadvertently filed under this cause of action, which motion was granted by the trial court. Also on March 2, a conference was held concerning pending motions in limine and jury instructions. During the conference, the trial court *sua sponte* dismissed the SVF charge, concluding that the charging information for that offense did not allege a crime. Specifically, the court observed that the SVF charge alleged that Sisson was a serious violent felon because he had committed the burglary of the Baber residence, and Sisson had obviously not been convicted of that crime at the time of the alleged SVF offense.

The next day, prior to the beginning of the trial, the State filed an amended charging information. The original charging information had alleged that the offenses were committed "on or about June 20, 2009." *Appellant's Appendix* at 15. The amended information alleged that the offenses were committed "on or about June 2009." *Id.* at 28, 30. Additionally, the State amended the SVF charge to allege that Sisson was a serious violent felon because he had previously been convicted of rape. At a hearing held prior to jury selection, the State voluntarily dismissed the amended SVF charge after the trial court expressed concerns over the propriety of allowing the State to allege a different predicate offense mere hours before trial. Over Sisson's objection, the trial court permitted the State to amend the dates alleged in the charging information with respect to the remaining charges. Thereafter, a jury was selected and sworn, and the matter proceeded to trial on the burglary, receiving stolen

4

property, and theft charges. At the close of the evidence, the jury retired for deliberations, but subsequently informed the court that it was unable to reach a verdict. Consequently, the trial court declared a mistrial.

Approximately a week later, the State refiled the amended SVF charge and habitual offender allegation without objection from Sisson. Sisson filed a notice of alibi defense on September 7, 2010, in which he alleged that he had been incarcerated on June 21, 2009, which he claimed was "the date of the alleged offense as testified to by the victims[.]" *Appellant's Appendix* at 44. The State did not file a response to Sisson's notice of alibi defense. On October 7, 2010, Sisson filed a motion to dismiss the charges against him, asserting that the Babers had testified at his first trial that the burglary of their home occurred on June 21, 2009, and that he could not have committed the charged offenses because he was incarcerated on that date. The State filed a response, in which it noted that the State had already amended the charging information to assert that the offense occurred on or about June 2009, as opposed to a specific date, and that the State was not required to respond to Sisson's notice of alibi because it intended to rely on the date range specified in the charging information. The State asserted further that Sisson alleged that he had been arrested on June 17, and there was evidence supporting a conclusion that the burglary occurred before that date. The State also argued that the facts of the case made it impossible for the State to identify the date of the offense with precision, and that Sisson had not asked the State to narrow the date range alleged in the charging information because his theory of defense was that the crime occurred on June 21, while he was incarcerated. After a hearing, the trial court denied Sisson's motion to dismiss.

5

On November 18, 2010, Sisson filed a motion to exclude evidence due to alleged discovery violations by the State. Specifically, Sisson alleged that the State had taken statements from several witnesses in August, but had not provided Sisson with transcripts of the interviews until November, in violation of the court's order requiring that discovery be supplemented every thirty days. The trial court heard the motion at pretrial conferences on November 22 and 29, at which the State argued that it provided Sisson with the evidence as soon as the interviews were transcribed. The trial court ultimately concluded that the State had violated the continuing discovery order, but that it had not acted in bad faith. The trial court denied the motion to exclude, but offered to continue the December 1 trial date in order to give Sisson additional time to prepare. Sisson declined the continuance, and the matter proceeded to trial as scheduled.

After three days of evidence, the jury found Sisson guilty of burglary, theft, and receiving stolen property. Thereafter, in a bifurcated proceeding, the jury also found Sisson guilty of the SVF charge and determined that he was a habitual offender. The trial court scheduled a sentencing hearing for January 3, 2011. On December 30, Sisson filed a motion for change of judge arguing that Judge Richard Maughmer, who had presided over the jury trial, should recuse himself from sentencing because he had acted as the prosecuting attorney on Sisson's rape conviction, which formed part of the basis for the habitual offender enhancement. Judge Maughmer denied the motion and sentenced Sisson to an aggregate term of fifty-three years in the Department of Correction. This appeal ensued.

1.

Sisson argues that the State should not have been allowed to refile the previously dismissed SVF charge and habitual offender allegation after his first trial ended in a mistrial. Specifically, Sisson argues that the refiling was vindictive and violated double jeopardy principles and prejudiced his substantial rights. Sisson concedes, however, that he failed to raise these arguments below or object in any way to the refiling. Therefore, unless he can show that fundamental error occurred, these issues are waived. *See Caron v. State*, 824 N.E.2d 745 (Ind. Ct. App. 2005), *trans. denied*.

> [F]undamental error is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible.

*Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

A prosecuting attorney may obtain a dismissal at any time prior to sentencing, and the granting of such a motion does not by itself bar a subsequent trial of the defendant for the same offense. *Malone v. State*, 702 N.E.2d 1102 (Ind. Ct. App. 1998) (citing Ind. Code Ann. § 35-34-1-13 (West, Westlaw current through 2012 Second Regular Session)); *Joyner v. State*, 678 N.E.2d 386, 393 (Ind. 1997)), *trans. denied*. "Absent the attachment of jeopardy, the State's dismissal of criminal charges does not preclude it from refiling and prosecuting a charge for the identical offense." *Id.* at 1103. Additionally, the State may not refile if doing so will prejudice the defendant's substantial rights. *Malone v. State*, 702 N.E.2d 1102. But even where an order sustaining a motion to dismiss by a prosecuting attorney would otherwise constitute a bar to further prosecution, the granting of such a motion does not bar a

subsequent trial on the same charge unless the defendant objects to the dismissal. I.C. § 35-41-1-13(b); *Joyner v. State*, 678 N.E.2d 386 (Ind. 1997).

Because Sisson did not object to the dismissal of the SVF charge and habitual offender allegation, the refiling was not barred. Moreover, even if Sisson had objected to the dismissal, his arguments on appeal are unavailing. As an initial matter, we note that the double jeopardy clause protects a person from suffering multiple prosecutions and punishments for the same offense. *Moore v. State*, 769 N.E.2d 1141 (Ind. Ct. App. 2002). The status of a habitual offender is not an offense or crime in itself; rather, it is a circumstance calling for a sentencing enhancement for the last crime charged. *Id.* Accordingly, this court has held that Indiana's double jeopardy clause does not apply to bar retrial of habitual offender proceedings even where the initial habitual offender determination is reversed due to insufficient evidence. *Id.* It follows *a fortiori* that Indiana's double jeopardy clause would not bar refiling of a habitual offender allegation where, as here, no trial was held on the allegation in the first instance. *See also Monge v. California*, 524 U.S. 721 (1998) (holding that the federal Double Jeopardy Clause does not apply to noncapital sentencing enhancement proceedings). Thus, Sisson's claim that double jeopardy principles prohibited the State from refiling the habitual offender allegation fails.

With respect to the SVF charge, we note that jeopardy attaches in a jury trial after the jury is empaneled and sworn. *Willoughby v. State*, 660 N.E.2d 570 (Ind. 1996). Here, the SVF charge was dismissed prior to jury selection in Sisson's first trial; accordingly, jeopardy never attached with respect to that charge and refiling was not barred. *See Cherry v. State*,

8

275 Ind. 14, 414 N.E.2d 301 (1981) (holding that double jeopardy did not bar refiling of charge on which there had been no trial), *cert. dismissed*, 453 U.S. 946.

Sisson also argues that the refiling was prohibited because it violated his substantial rights. Specifically, he argues that the State's refiling permitted the State to evade his speedy trial rights. *See Jones v. State*, 701 N.E.2d 863 (Ind. 1998) (holding that the State's power to dismiss and refile charges may not be used to evade a defendant's speedy trial rights). Sisson moved for a speedy trial on March 8, 2010, less than a week after his first trial ended in a mistrial due to jury deadlock. On March 12, 2010, the State refiled the SVF charge and habitual offender allegation. On March 18, 2010, Sisson filed a motion to withdraw his speedy trial request, in which Sisson stated that he had "determined that it would be in his best interest to withdraw his previous request for a fast and speedy trial in order to permit . . . counsel [to] conduct further discovery." *Appellant's Appendix* at 36. Sisson has not directed our attention to any evidence suggesting that Sisson's withdrawal of his speedy trial request was in any way related to the refiling of the SVF charge and habitual offender allegation, or that the State's purpose in refiling was to prevent Sisson from receiving a speedy trial. And even assuming that Sisson's withdrawal of his speedy trial request was related to the refiling, Sisson has not established that the alleged deprivation of his speedy trial rights made it impossible for him to receive a fair trial so as to support a claim of fundamental error.

Sisson also claims that the refiling of the SVF charge and habitual offender allegation was vindictive. The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits prosecutorial vindictiveness. *Blackledge v. Perry*, 417 U.S. 21 (1974). To find a due process violation, we need not conclude that the prosecutor actually acted

9

vindictively; rather, it is sufficient if the prosecutor's actions raise the apprehension of vindictive motive. *Id.*

Sisson argues that under the circumstances of this case, a presumption of prosecutorial vindictiveness should arise. In *Cherry v. State*, our Supreme Court held that:

> when the prosecution has occasion to file more numerous or more severe charges for the same basic criminal conduct against an accused after the accused has successfully exercised his statutory or constitutional rights to an appeal, the prosecution bears a heavy burden of proving that any increase in the number or severity of the charges was not motivated by a vindictive purpose.

275 Ind. 14, 414 N.E.2d 301, 305 (1981). Here, however, the State did not file more numerous or severe charges following a successful appeal; rather, the State refiled previously dismissed counts after Sisson's first trial ended in a mistrial due to jury deadlock. Our Supreme Court has held that unless there is new evidence or information discovered to warrant additional charges, prosecutorial vindictiveness is presumed where more serious charges are brought against a defendant after he successfully moves for a mistrial. *Warner v. State*, 773 N.E.2d 239 (Ind. 2002). But in this case, Sisson did not move for a mistrial in an effort to preserve his right to a fair trial as the result of some error. Rather, the trial court *sua sponte* declared a mistrial, without objection from Sisson or the State, after the jury indicated that it was unable to reach a verdict.

Sisson has not directed our attention to any Indiana cases addressing the application of the presumption of vindictiveness where additional charges are filed after the declaration of a mistrial due to jury deadlock. He does, however, rely heavily on *United States v. Whaley*, 830 F.2d 1469 (7th Cir. 1987), *abrogated on other grounds as recognized in United States v.*

10

*Durrive*, 902 F.2d 1221, 1228 (7ᵗʰ Cir. 1990).  This case is not at all supportive of Sisson's position on appeal and in fact supports the conclusion that the presumption of vindictiveness does not apply under these circumstances.

In *United States v. Whaley*, the Seventh Circuit addressed whether the presumption of vindictiveness should apply when the United States filed additional charges against the defendant after his first trial ended in a mistrial as a result of a deadlocked jury.  The court first noted that the United States Supreme Court "has made clear that 'the Due Process Clause is not offended by *all* possibilities of increased punishment . . . but only by those that pose a realistic likelihood of vindictiveness.'" *Id.* at 1477 (quoting *United States v. Goodwin*, 457 U.S. 368, 384 (1982)).  The court held that in determining whether the presumption of vindictiveness applies in the context of a mistrial, the initial inquiry is into the cause of the mistrial.  *United States v. Whaley*, 830 N.E.2d 1469.  The court also stated that "[c]ourts have consistently held that no realistic likelihood of vindictiveness is found when a jury is deadlocked and both parties agree that a declaration of mistrial is a necessity." *Id.* at 1478-79.

The court concluded that there was no realistic likelihood of vindictiveness in the case before it because the trial court had *sua sponte* declared a mistrial due to the jury's inability to reach a verdict.  *United States v. Whaley*, 830 F.2d 1469.  Specifically, the court reasoned that "Appellant Whaley took no action; he exercised no statutory or constitutional right, and cannot now claim that he was penalized for exercising such a right." *Id.* at 1479.  The court noted further that the appellant had not alleged or demonstrated that the additional indictment was filed in order to discourage him from exercising such a right.  *United States v. Whaley*,

11

830 F.2d 1469. The court therefore concluded that no presumption of vindictiveness had arisen. *Id.*; *see also United States v. Perry*, 335 F.3d 316 (4th Cir. 2003) (finding no prosecutorial vindictiveness where unopposed mistrial resulted from jury deadlock).

Despite Sisson's arguments to the contrary, these are precisely the circumstances presented here.[5] When the jury in Sisson's first trial indicated that it was unable to reach a verdict, the trial court *sua sponte* declared a mistrial without objection from Sisson or the State. Because the mistrial did not result from Sisson's exercise of any statutory or constitutional right, Sisson cannot claim that he was punished by the State for exercising such a right. Nor does Sisson argue that the additional charges were filed to discourage him from exercising such a right. Accordingly, there is no reasonable likelihood of vindictiveness, and the presumption of prosecutorial vindictiveness is not warranted.

---

[5] Sisson asserts that "the mistrial was due to the State's failure to introduce basic evidence necessary for the jury to reach a decision." *Appellant's Brief* at 35. Specifically, Sisson notes that during deliberations, the jury requested a list of the stolen property, which the court declined to provide, and he argues that the jury deadlocked as a result. Sisson's argument is unconvincing. The trial court declared a mistrial because the jury was unable to reach a verdict. Inquiry into why the jury deadlocked would be speculative and wholly inappropriate.

2.

Next, Sisson argues that "the State's charging information unlawfully identified the entire month of June as the date of the crime." *Appellant's Brief* at 22. Specifically, he claims that because he filed a notice of alibi defense asserting that he had been incarcerated since June 17, 2009, the State was required to narrow the time frame alleged in its charging information from "on or about June 2009." *Appellant's Appendix* at 28, 30. According to Sisson, the State's failure to do so constituted a violation of Indiana's alibi statute.

Sisson has waived appellate review of this argument by failing to raise it at trial. *See Whitfield v. State*, 699 N.E.2d 666 (Ind. Ct. App. 1998) (holding that arguments raised for the first time on appeal are waived and will not be considered on appeal), *trans. denied*. Sisson seems to suggest that he preserved this argument by filing his October 7, 2010 motion to dismiss. But Sisson raised none of these arguments in that motion or at the hearings thereon. Sisson's motion to dismiss asserted only that Sisson had filed a notice of alibi defense to which the State had not responded, that the Babers had previously testified that the burglary occurred on June 21, 2009, and that Sisson could not have committed the offense because he was incarcerated on that date. Thus, Sisson sought dismissal on the basis that it was factually impossible for him to have committed the offense. The trial court properly denied Sisson's motion because the date of the burglary was a heavily contested factual issue to be determined by the jury.

Sisson never argued that the State was required to narrow the timeframe alleged in the charging information or that the State had violated the alibi statute.[6]  Indeed, the State noted in its response to Sisson's motion to dismiss that Sisson had not asked the State to narrow the date range alleged in the charging information because his theory of defense was that he could not be guilty because the crime occurred on June 21, while he was incarcerated.  "An appellant cannot sit idly by without objecting, await the outcome of trial, and thereafter raise an issue for the first time on appeal." *Cheek v. State*, 567 N.E.2d 1192, 1195 (Ind. Ct. App. 1991).  If Sisson believed that the lack of precision in the charging information impaired his ability to present a defense, he should have raised the issue prior to trial.  His failure to do so constitutes waiver of any error in this regard.

To the extent Sisson argues that the State's failure to narrow the time frame set forth in the charging information to exclude the time during which he was incarcerated was fundamental error, we conclude that he has not satisfied his burden of showing that the alleged violation made it impossible for him to receive a fair trial.  Sisson argues that the imprecision in the charging information impaired his ability to present a defense because he "could not tell whether he should prepare and marshal an alibi defense or pursue another defense altogether." *Appellant's Brief* at 24.  Sisson also argues that the State's failure to narrow the date specified in the charging information forced him to reveal to the jury that he

---

[6] In his motion to dismiss, Sisson asserted that the State had not responded to his notice of alibi defense.  The State, however, is not required to respond to a defendant's notice of alibi defense in all cases.  Ind. Code Ann. § 35-36-4-2 (West, Westlaw current though 2012 Second Regular Session) (providing that a prosecutor need not respond to a notice of alibi if he intends to present evidence that the offense took place at the time and place listed in the charging information).  Sisson made no argument in his motion to dismiss that the State was required to respond to his notice of alibi defense under the circumstances of this case.

had been incarcerated on other charges in order to refute any possible inference that he had committed the burglary after June 17.[7]

Both the State and Sisson were aware well before Sisson's second jury trial that Sisson was incarcerated from June 17 forward and that the State would have to prove that he committed the burglary prior to that date in order to secure a conviction. The date of the burglary was heavily contested at trial. The State presented evidence that the burglary occurred prior to June 17, and Sisson attempted to establish that the burglary occurred after that date and, consequently, that he could not have committed the crime due to his incarceration.

Because Sisson was aware that the State intended to present evidence that Sisson committed the crime prior to the date of his incarceration before trial, his claim that the State's failure to narrow the time frame alleged in the charging information impaired his ability to formulate a defense is unpersuasive. And given that Sisson's defense strategy at both trials was to argue that the burglary took place during his incarceration, we are likewise unconvinced by his suggestion that he was unfairly forced to reveal to the jury that he had been incarcerated. Moreover, even if we accept Sisson's assertions as true, he has not

---

[7] Sisson also argues that the State's failure to narrow the time frame set forth in the charging information "risked placing Sisson in jeopardy for the same crime twice." *Appellant's Brief* at 25. Sisson seems to be referencing the law applicable when there is a variance between the allegations in a charging information and the evidence presented at trial. *See Quillen v. State*, 271 Ind. 251, 253 391 N.E.2d 817, 819 (1979) (noting that "a variance, in order to be fatal, must be of such substantial nature as to mislead the accused in preparing and maintaining his defense or be of such a degree as is likely to place him in second jeopardy for the same offense"). Here, the charging information alleged that Sisson committed the offenses "on or about June 2009." *Appellant's Appendix* at 28. The evidence presented at trial established that the offenses occurred in late May or in June of 2009—in other words, on or about June 2009. Thus, there was no variance between the allegations in the charging information and the evidence presented at trial. Nor is there any realistic risk that Sisson will be prosecuted again for the same burglary of the Baber residence.

established that the alleged harm was so serious as to render a fair trial impossible. Accordingly, Sisson has not met the necessary threshold for establishing fundamental error.

3.

Next, Sisson argues that the trial court abused its discretion in denying his motion to exclude the testimony of various witnesses based on alleged discovery violations by the State. Trial courts have broad latitude with respect to discovery matters, and their rulings receive great deference on appeal. *Cain v. State*, 955 N.E.2d 714 (Ind. 2011). Where a discovery violation has occurred, a continuance is the preferred remedy. *Id.* "Exclusion of evidence is only appropriate if the defendant shows 'that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial.'" *Id.* at 718 (quoting *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000)). "Failure to alternatively request a continuance upon moving to exclude evidence, where a continuance may be an appropriate remedy, constitutes a waiver of any alleged error pertaining to noncompliance with the court's discovery order." *Warren v. State*, 725 N.E.2d at 832.

Here, Sisson not only failed to alternatively request a continuance, he declined the trial court's offer to grant a continuance. Nevertheless, Sisson claims he has not waived this issue because a continuance was not an appropriate remedy. In support of this argument, Sisson argues that he had filed a motion for a speedy trial and that he had "made it clear that he did not want the case to continue being prolonged and was incarcerated at the time the court refused to exclude the untimely produced evidence." *Appellant's Brief* at 41. We note that Sisson filed a request for a speedy trial after his first trial ended in a mistrial; we note further, however, that Sisson withdrew that request on March 18, 2010, months before the

16

alleged discovery violation in this case took place. Sisson's choice to proceed to trial as scheduled rather than accept the trial court's offer of additional time to prepare was an expression of his preference and in no way indicates that a continuance was not an adequate remedy for the alleged discovery violation. Accordingly, Sisson has waived appellate review of this issue. [8]

4.

Next, Sisson argues that the trial court abused its discretion in admitting into evidence a letter and photograph Sisson sent to Myers while they were both incarcerated. The decision to admit or exclude evidence lies within the trial court's sound discretion. *Filice v. State*, 886 N.E.2d 24 (Ind. Ct. App. 2008), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Dixon v. State*, 967 N.E.2d 1090 (Ind. Ct. App. 2012). We will not reverse absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. *Johnson v. State*, 831 N.E.2d 163 (Ind. Ct. App. 2005), *trans. denied*.

On appeal, Sisson argues that the trial court abused its discretion when it allowed the State to introduce on redirect examination of Myers a letter and photograph that Sisson had written to Myers because the evidence exceeded the scope of cross-examination. [9] Questions

---

[8] In an attempt to avoid waiver, Sisson argues in his reply brief that the State's discovery violation constituted fundamental error. But, as our Supreme Court has recently noted, "parties may not raise an issue, such as fundamental error, for the first time in a reply brief." *Curtis v. State*, 948 N.E.2d 1143, 1148 (Ind. 2011). Because Sisson failed to allege fundamental error in this regard in his principal appellate brief, the issue is waived.

[9] Sisson also argues that the letters were inadmissible under Ind. Evidence Rule 403. Because Sisson did not object on this basis at trial, this argument is waived. *Small v. State*, 736 N.E.2d 742 (Ind. 2000) (noting that a defendant may not object on one ground at trial and then raise a different claim of error on appeal).

17

concerning the scope and extent of redirect examination fall within the sound discretion of the trial court. *Meagher v. State*, 726 N.E.2d 260 (Ind. 2000). "The role of redirect examination is to address new matters brought up upon cross-examination, and to correct false or misleading impressions left after cross-examination." *Lycan v. State*, 671 N.E.2d 447, 455 (Ind. Ct. App. 1996).

On direct examination, Myers testified that she accompanied Sisson to the Baber residence and waited in the car during the burglary and that she later accompanied Sisson to Sturdivant's house to sell the stolen guns. On cross-examination, Sisson introduced into evidence a letter Myers wrote to Sisson while they were both incarcerated, in which she wrote that the police had "scared her so bad she just told them what they wanted to hear." *Transcript Vol. 13* at 238. On redirect, the State was permitted to introduce into evidence over Sisson's objection a letter and photograph Sisson sent to Myers in response. In the letter, Sisson accused Myers of lying to the police, demanded that she "fix it," threatened to go to the police and tell them the "real deal" if Myers did not comply, and stated that Myers would end up doing "some serious time." *Exhibit Vol.*, State's Exhibit 8. The photograph was a picture of Sisson's mother's gravestone, and Sisson wrote a message on the back again demanding that Myers "fix [her] lies." *Id.*, State's Exhibit 9. The State argues that the letter and photograph were not beyond the scope of cross-examination because they were admitted to rehabilitate Myers's credibility, which Sisson had attacked on cross-examination by introducing evidence suggesting that Myers had not been truthful with police. Sisson argues that the letter and photograph did nothing to rehabilitate Myers's credibility in this regard.

Even assuming that the letter and photograph were improperly admitted on redirect,

18

reversal is not warranted because the error was harmless. "The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood the questioned evidence contributed to the conviction." *Martin v. State*, 779 N.E.2d 1235, 1242 (Ind. Ct. App. 2002), *trans. denied*. Myers testified that she and Sisson drove to the Baber residence, she waited in the car while Sisson went inside, and Sisson emerged shortly thereafter and put something in the trunk of the car. Myers testified further that she accompanied Sisson to Sturdivant's house later that day to sell guns Sisson had stolen from the Baber residence. Sturdivant testified that he purchased the guns from Sisson and that Sisson had told him that they "were so hot that the people don't even know they are gone yet." *Transcript Vol. 13* at 385. DeFord also testified that Sisson sold Sturdivant guns, and Pierce testified that Sturdivant gave him a gun that was later determined to have been stolen from the Baber residence. Because of the overwhelming nature of the evidence against Sisson, there is no substantial likelihood that the letter and photograph contributed to his conviction.

Nevertheless, Sisson argues that admission of the letter and photograph was not harmless because Sisson's threats were "highly inflammatory and incendiary" and "likely to inflame the sympathies of the jury in [Myers's] favor." *Reply Brief* at 14. We disagree. Prior to offering the letter and photograph on redirect, the State had already elicited testimony from Myers on direct examination that Sisson had threatened her. Specifically, Myers testified that Sisson had told her not to testify and that "he would hurt [her] husband and [her] mom and [her] if [she] did." *Transcript Vol. 13* at 263. Myers testified further that

19

she was afraid to testify and had nightmares about Sisson as a result. Sisson objected to the admission of this testimony on the grounds that it had "no probative value" and was irrelevant under Ind. Evidence Rule 402. *Id.* at 264. Sisson raises no such argument on appeal, and even if he did, the argument would fail. *See Cox v. State*, 422 N.E.2d 357, 361 (Ind. Ct. App. 1981) (holding that "threats made against a witness by the defendant are in the nature of an attempt to manufacture or suppress evidence and are therefore viewed as an admission of guilt" and "their relevance on the issue of guilt normally renders them proper for jury consideration"). Thus, because the jury had already been presented with evidence that Sisson had made overt threats of violence against Myers, her husband, and her mother in an attempt to intimidate Myers and prevent her from testifying, it is highly unlikely that the relatively veiled threats contained in the letter and photograph stood out in the minds of the jurors as particularly shocking or distasteful. For all of these reasons, we conclude that any error in the admission of the letter and photograph was harmless.

5.

Sisson next argues that the trial court abused its discretion by excluding evidence of Sturdivant's lengthy criminal history, including three burglary convictions. Sisson argues that such evidence was admissible for impeachment purposes under Indiana Evidence Rule 609 and to prove that Sturdivant committed the burglary of the Baber residence.

As an initial matter, we note that Sisson never argued at trial that Sturdivant's criminal history was probative of whether or admissible to prove that Sturdivant committed the burglary of the Baber residence. Accordingly, Sisson's argument in this regard is waived. Waiver notwithstanding, Sturdivant's criminal history, including his burglary convictions,

20

was clearly inadmissible for this purpose. *See* Ind. Evidence Rule 404(b) (providing that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); *Britt v. State*, 937 N.E.2d 914 (Ind. Ct. App. 2010) (holding that the prohibition in Evidence Rule 404(b) applies to persons other than the defendant). Contrary to Sisson's argument on appeal, evidence that Sturdivant had committed burglary in the past has no direct bearing on whether he committed the burglary at issue in this case. The only possible purpose for admitting evidence of his past crimes as substantive evidence would be to show that Sturdivant had a propensity to commit burglary and acted in conformity therewith. As such, the evidence would fall squarely within the prohibition of Evidence Rule 404(b). *See Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998) (noting that Rule 404(b) "is designed to prevent the jury from making the 'forbidden inference' that prior wrongful conduct suggests present guilt").

Nevertheless, the inadmissibility of Sturdivant's criminal history for substantive purposes does not necessarily preclude its admission for impeachment purposes under Ind. Evidence Rule 609. Rule 609 provides, in relevant part:

> **(a) General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime shall be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or (2) a crime involving dishonesty or false statement.

> **(b) Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or, if the conviction resulted in confinement of the witness then the date of the release of the witness from the confinement unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .

"The party seeking to overcome the Rule 609(b) presumption of exclusion must support its probative value argument with specific facts and circumstances upon which the trial court may base a finding of admissibility." *Hall v. State*, 769 N.E.2d 250, 253 (Ind. Ct. App. 2002). Trial courts may consider a broad range of factors in balancing the probative value of an aged conviction against the risk of unfair prejudice, including: (1) the impeachment value of the prior crimes; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the witness's testimony, and (5) the centrality of the credibility issue. *Saunders v. State*, 848 N.E.2d 1117 (Ind. Ct. App. 2006), *trans. denied*.

It is undisputed that all of Sturdivant's prior convictions, aside from one mail fraud conviction from 1985 that will be discussed further below, fell outside the time limit set forth in Evid. R. 609(b). Thus, Sisson was required to establish that the probative value of the convictions substantially outweighed their prejudicial effect. Aside from the 1985 mail fraud conviction, Sturdivant's criminal history included burglary convictions from 1977, 1978, and 1979, and convictions for vehicle theft, robbery, and kidnapping from 1983. Thus, at the time of Sisson's trial, all of the convictions were more than twenty-five years old. Additionally, Sturdivant's testimony was in large part cumulative of the testimony of Myers and DeFord that Sisson sold the stolen guns to Sturdivant. Under these facts and circumstances, the trial court did not abuse its considerable discretion in determining that Sisson failed to establish that the probative value of Sisson's aged convictions substantially outweighed their prejudicial effect.

22

As for Sturdivant's federal mail fraud conviction, the record is unclear concerning when he was released from confinement for that offense. But even assuming this conviction was admissible under Evid. R. 609, reversal is not warranted. "Even when a decision on the admissibility of evidence is an abuse of discretion, we will not reverse a judgment where that error is harmless, that is, where the error did not affect the substantial rights of a party." *Dixon v. State*, 967 N.E.2d at 1092. Here, the jury was presented with ample evidence of Sturdivant's criminal activities around the time of the burglary of the Baber residence. Sturdivant testified that he was a drug dealer, that he had helped orchestrate a burglary of Pierce's residence, and that he knowingly purchased stolen guns from Sisson. Evidence was also presented that Sturdivant was initially uncooperative with police and that he had been granted immunity for his testimony. In short, there were many reasons to doubt Sturdivant's credibility, and the exclusion of evidence concerning one mail fraud conviction from 1985 would not have affected the jury's ultimate determination in this regard. Accordingly, any error in excluding evidence of Sturdivant's 1985 mail fraud conviction was harmless.

6.

Finally, Sisson argues that the trial court erred in denying his motion for change of judge filed after the conclusion of his trial, but prior to his sentencing hearing. Sisson argues that he was entitled to a change of judge for the purposes of sentencing because Judge Maughmer had acted as the prosecuting attorney in Sisson's previous rape conviction, which was the predicate offense for his SVF conviction and formed part of the basis for his habitual offender adjudication.

A trial court's ruling on a motion for change of judge is reviewed under the clearly

23

erroneous standard, and the law presumes that a judge is unbiased and unprejudiced. *Garland v. State,* 788 N.E.2d 425 (Ind. 2003). Indiana Criminal Rule 12 provides that the State or a defendant may request a change of judge by timely filing an affidavit alleging that the judge has a personal bias against the State or the defendant and setting forth the facts and reasons supporting the allegation of bias. The rule sets forth the following requirements with respect to timeliness:

> **(D) Time Period for Filing Request for Change of Judge or Change of Venue.** In any criminal action, no change of judge or change of venue from the county shall be granted except within the time herein provided.
>
>> *(1) Ten Day Rule.* An application for a change of judge or change of venue from the county shall be filed within ten (10) days after a plea of not guilty, or if a date less than ten (10) days from the date of said plea, the case is set for trial, the application shall be filed within five (5) days after setting the case for trial. . . .
>>
>> *(2) Subsequently Discovered Grounds.* If the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, the applicant may file the application, which shall be verified by the party specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten (10) days, and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion.

The law is settled that a defendant is not entitled to a change of judge where the mandates of Criminal Rule 12 have not been followed. *Flowers v. State,* 738 N.E.2d 1051 (Ind. 2000). Moreover, our Supreme Court has held that there is no right to a change of judge for the sentencing phase of proceedings. *Johnson v. State*, 472 N.E.2d 892 (Ind. 1985)

Here, Sisson did not file his motion for change of judge until December 30, 2010,

24

nearly a month after his jury trial resulted in the convictions at issue in this appeal. Thus, the motion was clearly untimely under Crim. R. 12(D)(1). And although Sisson alleged facts he contended supported a finding that a change of judge was required due to bias, Sisson failed to allege when he first learned of the grounds for a change of judge or why these grounds could not have been discovered earlier in the exercise of due diligence. Because Sisson did not comply with the requirements of Crim. R. 12, the trial court properly denied his motion for change of judge. *See Flowers v. State*, 738 N.E.2d 1051.

Sisson also argues that Judge Maughmer was required to recuse himself under Indiana's Code of Judicial Conduct. Our Supreme Court has held that "the Judicial Canons may provide an independent basis requiring disqualification even if the analysis required for determination under Criminal Rule 12(B) would not require a change of judge." *Voss v. State*, 856 N.E.2d 1211, 1221 (Ind. 2006). Rule 2.11(A) of the Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" The comments to Rule 2.11 provide that "[a] judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed." Jud. Cond. R. 2.11, cmt. 2. Whether the trial court harbors actual bias against the defendant is not the dispositive issue under the rule; the true question is whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality. *Patterson v. State*, 926 N.E.2d 90 (Ind. Ct. app. 2010).

Sisson does not allege that Judge Maughmer was actually biased against him; rather, according to Sisson, Judge Maughmer's participation as the prosecutor on the rape charge

25

that formed the predicate offense for the SVF charge and part of the basis for the habitual offender adjudication created an appearance of bias sufficient to warrant recusal. Indiana courts have rejected similar arguments where, as here, the existence of the prior conviction is not factually contested at trial.[10] *See Dishman v. State*, 525 N.E.2d 284 (Ind. 1988) (holding that defendant was not entitled to a change of judge where the presiding judge had acted as the prosecuting attorney in the cases forming the basis for the habitual offender allegation because there was no factual dispute concerning the prior convictions); *Gunter v. State*, 605 N.E.2d 1209 (Ind. Ct. App. 1993) (acknowledging that a judge's involvement as the prosecuting attorney on the convictions supporting a habitual offender allegation was not cause for disqualification). Sisson attempts to distinguish *Dishman v. State*, 525 N.E.2d 284, arguing that the court in that case merely held that the judge was not disqualified from presiding over the jury's determination of the defendant's habitual offender status, and here, Sisson is arguing that Judge Maughmer was disqualified from sentencing him.

Sisson has not directed our attention to any authority supporting the argument that a judge may be qualified to preside over a jury trial, yet disqualified for the purposes of sentencing. As a general matter, the same judge who presides over the defendant's trial will sentence the defendant, and there is no reason to doubt that this was the case in *Dishman v. State, id. See also Gunter v. State*, 605 N.E.2d at 1210 (holding that "our criminal law contemplates that the same judge will preside throughout a criminal trial"), *trans. denied*.

---

[10] Sisson did not dispute his prior rape conviction, in which Judge Maughmer acted as the prosecuting attorney. Sisson did, however, dispute the other felony conviction set forth in the habitual offender allegation, an auto theft conviction out of Carroll County. Sisson does not suggest that Judge Maughmer had any involvement in the prosecution of his auto theft conviction.

Moreover, Jud. Cond. R. 2.11 draws no distinction between trial and sentencing; if there is a reasonable basis for doubting a judge's impartiality, he or she may not preside over any phase of the proceedings. Thus, because Judge Maughmer was not disqualified from presiding over Sisson's jury trial due to an appearance of bias stemming from his involvement as the prosecuting attorney on Sisson's prior rape conviction, there is no basis to conclude that he was disqualified from pronouncing sentence for that reason. Under these facts and circumstances, we cannot conclude that Judge Maughmer was required to recuse himself prior to Sisson's sentencing hearing.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.