## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 30 2017, 6:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott L. Barnhart
Brooke Smith
Keffer Barnhart LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Jason Montooth, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 30, 2017 <br><br> Court of Appeals Case No. <br> 82A01-1702-CR-319 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable Kelli E. Fink, Magistrate <br><br> Trial Court Cause No. <br> 82C01-1610-F6-5814 |

**Crone, Judge.**

# Case Summary

A jury convicted Charles Jason Montooth of class A misdemeanor intimidation, class A misdemeanor resisting law enforcement, and class B misdemeanor disorderly conduct. He appeals, claiming that the trial court abused its discretion in denying his motion to dismiss two felony intimidation charges. He also challenges the sufficiency of the evidence to support his conviction for class A misdemeanor intimidation. We affirm.

# Facts and Procedural History

Acting on a report of a disturbance at a local home-based services agency, Vanderburgh County Sheriff's Department Sergeant Mark Rasure and Deputy Erik Nilssen interviewed witnesses and learned that Montooth had allegedly threatened to kill his ex-girlfriend's family members. Sergeant Rasure located Montooth at his apartment complex, and Deputy Nilssen transported him to the command post for an interview. Montooth initially was cooperative. When Deputy Nilssen informed him that he was being arrested and taken to jail, he said that he was on probation and begged repeatedly to be released. His pleas turned to anger, and he became physically combative to the point that it took four officers to subdue him.

As the officers escorted him to a patrol vehicle for transport to jail, he became verbally aggressive. Deputy Nilssen's body camera recorded Montooth repeatedly calling the officers liars and "motherf**kers," accusing them of setting him up, and exclaiming, "F**k you." State's Ex. 2. Deputy Nilssen

interviewed Montooth again in a port at the jail, and Montooth had to be placed in a restraint chair. Montooth said, "I'd like to see you come in a cell without f**king cuffs on me, I'd tear your f**king head off dude. I'll f**king tear your head off." State's Ex. 3. Deputy Nilssen asked Montooth why he would tear his head off, and Montooth responded, "Because you're a lying a** motherf**king pig, dude." *Id.* The deputy testified that Montooth also said, "I'll f**king beat the sh*t out of you you stupid mother**kers …. I wish you'd just give me one f**king opportunity to get out of this f**king chair and cuffs man, one f**king opportunity to show you." *Id.* Montooth then said, "I'm sure you had a hundred thousand threats before bud, but you never met Charles Montooth." *Id.* Later, when Deputy Nilssen informed Montooth that he was going to be barred from entering the home-based service agency's offices, he clenched his fists and said, "Nilssen, do you want some of this bro, for real man, do you f**king want some bro?" Tr. Vol. 2 at 124; State's Ex. 3. Shortly thereafter, while Deputy Nilssen was typing up his report, Montooth made a handgun-like gesture aimed at the deputy.

[4] The State charged Montooth with two counts of level 6 felony intimidation, class A misdemeanor resisting law enforcement, and class B misdemeanor disorderly conduct. The State subsequently added a habitual offender count. Montooth filed a motion to dismiss the two intimidation counts, claiming that they were not charged with sufficient certainty and might subject him to double jeopardy. The trial court denied his motion to dismiss, as well as his motion to suppress certain evidence. He filed a motion to reconsider, which the trial court

denied, and the case proceeded to a jury trial. At the outset of the trial, one of the felony intimidation counts was dismissed on the State's motion. The jury convicted Montooth of intimidation as a class A misdemeanor, as well as class A misdemeanor resisting law enforcement and class B misdemeanor disorderly conduct. The habitual offender count was dismissed. The trial court sentenced Montooth to concurrent 300-day terms on the class A misdemeanor convictions and 182 days for disorderly conduct. Montooth appeals his intimidation conviction.

## Discussion and Decision

## Section 1 – The trial court acted within its discretion in denying Montooth's motion to dismiss his felony intimidation counts.

[5]     Montooth challenges the trial court's denial of his motion to dismiss the level 6 felony intimidation counts, claiming that the charging information lacked sufficient specificity and might subject him to multiple prosecutions for the same offense. At the outset, we note that the second count was dismissed on the State's motion at the beginning of Montooth's jury trial. Thus, we review this issue only as it relates to the first count, of which he was convicted as a class A misdemeanor. We review the denial of a motion to dismiss for an abuse of discretion. *Tiplick v. State*, 43 N.E.3d 1259, 1262 (Ind. 2015). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the circumstances before it. *Lebo v. State*, 977 N.E.2d 1031, 1035 (Ind. Ct. App. 2012). Montooth asserts that the charging information lacked

sufficient certainty as to the threats that formed the basis for his first intimidation count. Indiana Code Section 35-34-1-2(a)(4) requires that the charging information be in writing and "set[] forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition." A charging information will be sufficient if it contains "a statement of the essential facts constituting the offense charged, as well as the statutory citation, the time and place of the commission of the offense, the identity of the victim (if any), and the weapon used (if any)." *Pavlovich v. State*, 6 N.E.3d 969, 975 (Ind. Ct. App. 2014) (citing *Laney v. State*, 868 N.E.2d 561, 566-67 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*. "The State is not required to include detailed factual allegations in a charging information." *Laney*, 868 N.E.2d at 567. "[T]he probable cause affidavit supporting the charging instrument may be taken into account in assessing whether a defendant has been apprised of the charges against him." *Lebo*, 977 N.E.2d at 1035. In other words,

> [s]ince the charging information and probable-cause affidavit are filed together, they should be viewed in tandem to determine if they satisfy the goal of putting the defendant on notice of the crimes with which [he] is charged during the applicable statute of limitations period so that [he] can prepare an appropriate defense.

*Woods v. State*, 980 N.E.2d 439, 443 (Ind. Ct. App. 2012).

[6]     Here, the charging information reads, in pertinent part,

> [I]n Vanderburgh County, State of Indiana, on or about September 28, 2016, Charles Jason Montooth did communicate a

threat to E. Nilssen, a law enforcement officer, with the intent that E. Nilssen be placed in fear of retaliation for a prior lawful act, to-wit: exercising police powers and the threat was communicated to E. Nilssen because of the occupation, profession, employment status, or ownership status of E. Nilssen, contrary to the form of the statutes in such cases made and provided by I.C. 35-45-2-1(a)(2) and I.C. 35-45-2-1(b)(1)(B) and against the peace and dignity of the State of Indiana.

Appellant's App. Vol. 2 at 117. In his motion to dismiss, Montooth identified four alleged threats as detailed by Deputy Nilssen in the probable cause affidavit:

(1) Stating that there "will be bloodshed"; (2) Stating that the Defendant "wanted three minutes alone" with the Deputy; (3) Stating that when the Defendant is released the Deputy will "see him in the streets"; or (4) the Defendant stating that he will "pray for you (Nilssen)" while pointing his hand in a "handgun-like" manner.

*Id*. at 44.

[7]     We find it difficult to discern Montooth's exact argument regarding the State's treatment of the threat element. He appears to argue that the State should have been required to identify one distinct threat upon which it would rely. However, the State is permitted to present to the jury alternative ways to find that the defendant committed a particular element of the offense. *Baker v. State*, 948 N.E.2d 1169, 1175 (Ind. 2011). Montooth decries the State's heavy reliance at trial on his alleged threat to tear the deputy's head off. As best we can discern, he believes that he was not advised that the State might use this

statement against him at trial.[1]  In this vein, we note first that during discovery, Montooth was provided with video footage from Deputy Nilssen's body camera showing his many threats to Nilssen, including the "tear your head off" threat. State's Ex. 3.  Thus, he cannot make a credible claim that he was unaware of this alleged threat.  As for his opportunity to prepare a defense against this statement, it is clear from the transcript that the defense was prepared for the State's use of this statement.  *See*, *e.g.*, Tr. at 14-15 (defense counsel's opening argument).  Additionally, we observe that the trial court gave an instruction on unanimity of verdict, thus safeguarding against jurors relying on different statements or acts by Montooth to establish the threat element of the offense. *See* Appellant's App. Vol. 2 at 81 (Instruction 7).[2]  *See also Baker*, 948 N.E.2d at 1177 (where State introduces evidence of multiple acts to meet certain element of offense, trial court should instruct jury that "they must either unanimously agree that the defendant committed the same act or acts or that the defendant

---

[1] Montooth did not allege a material variance in his appellate brief.  Nor did he object when the "tear your head off" allegation was raised at trial.  As such, he has waived the issue for consideration on appeal.  *Bayes v. State*, 779 N.E.2d 77, 80 (Ind. Ct. App. 2002), *trans. denied* (2003).

[2] Instruction 7 reads:

> The Defendant is accused in Count I of having committed Intimidation against E. Nilssen on or about September 28, 2016.  The State has presented evidence that the Defendant may have committed more than one act of Intimidation against E. Nilssen on or about September 28, 2016.  Before you may find the Defendant guilty, you must all unanimously find and agree that the State proved beyond a reasonable doubt that the Defendant committed the same specific, single act of Intimidation against E. Nilssen on or about September 28, 2016.  If you find the Defendant guilty, your verdict does not have to specify the particular act of intimidation that the Defendant committed.

Appellant's App. Vol. 2 at 81.

committed all of the acts described by the victim and included within the time period charged.").

[8] As explained more thoroughly below, Montooth made verbal and nonverbal threats to Deputy Nilssen. He was apprised of the State's evidence concerning these threats through multiple means, i.e., the charging information, probable cause affidavit, and discovery. Based on the foregoing, we conclude that the trial court acted within its discretion in denying his motion to dismiss.

## Section 2 – The evidence is sufficient to support Montooth's intimidation conviction.

[9] Montooth also maintains that the evidence is insufficient to support his conviction for class A misdemeanor intimidation. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[10] The jury convicted Montooth of class A misdemeanor intimidation. To establish this offense, the State was required to prove that Montooth communicated a threat to another person (Deputy Nilssen), with the intent of

placing the other person in fear of retaliation for a prior lawful act.[3] Ind. Code § 35-45-2-1(a)(2). Subsection (d) defines "threat" as "an expression, by words or action, of an intention to … (1) unlawfully injure the person threatened."

[11] With respect to the intentional communication of threats, Montooth characterized his words and actions as merely unruly and unpleasant, rather than intentional or threatening, made only because he "became upset" when he was arrested. Tr. Vol. 2 at 15; Appellant's Br. at 13. However, he said that he would tear Deputy Nilssen's "f\*\*king head off" and "f\*\*king beat the sh\*t out of" the officers. State's Ex. 3; Tr. Vol. 2 at 122. He even characterized his own conduct as a threat when he said, "I'm sure you had a hundred thousand threats before bud, but you never met Charles Montooth." State's Ex. 3. He also said that there would be bloodshed when he got released and that he would see Deputy Nilssen on the streets. Appellant's App. Vol. 2 at 121. As for his nonverbal conduct, we note that after Montooth realized that his pleas for release from custody had proved unsuccessful, he became physically combative to the point that it took four officers to subdue him. At the jailhouse, he clenched his handcuffed fists at Deputy Nilssen and goaded, "do you f\*\*king want some bro?" Tr. Vol. 2 at 124; State's Ex. 3. A few minutes later, he pointed his hand at him in a "handgun-like manner." Appellant's App. Vol. 2

---

[3] In his reply brief, Montooth argues for the first time that Deputy Nilssen could not have been in fear of retaliation for a prior lawful act because the officers acted unlawfully in arresting him in the first place. Because he did not raise this in his initial appellate brief, he has failed to preserve the issue for review. *See Sisson v. State*, 985 N.E.2d 1, 13 n.7 (Ind. Ct. App. 2012) (issues raised for the first time in reply brief are waived), *trans. denied* (2013).

at 121. Montooth's nonverbal conduct sent the additional message to Deputy Nilssen and the other officers that he had the intent and capability to place them in fear of retaliation for arresting and holding him rather than releasing him. His attempts to minimize his words and actions are merely invitations to reweigh evidence, which we may not and will not do. *See Moore*, 27 N.E.3d at 754.

[12] Montooth also asserts that his statements were merely conditional threats aimed at future conduct and therefore were not criminalized under the intimidation statute. He relies on *Causey v. State*, 45 N.E.3d 1239, 1242 (Ind. Ct. App. 2015), in which another panel of this Court held the evidence insufficient to support the defendant's intimidation conviction where police responded to a disturbance at his residence, and he yelled, "If you come any closer I'll shoot." *Id*. The *Causey* court held that the State's evidence amounted to vague descriptions of defendant's statements pertaining to a future act rather than a prior act. *Id*.

[13] More recently, in *Roar v. State*, 52 N.E.3d 940, 942 (Ind. Ct. App. 2016), *adopted and incorporated in part by Roar v. State*, 54 N.E.3d 1001 (Ind. 2016), the defendant challenged the sufficiency of the evidence to support his intimidation conviction, where his sister's property manager placed an eviction notice on her door, and the defendant told the property manager that if she came back on the property, he would kill her. On appeal, he relied on *Causey*, arguing that his threat was conditional and pertained to future conduct. *Id*. at 943. Another panel of this Court held that the State presented sufficient evidence that the

defendant's threat was made with intent of placing the manager in fear of retaliation for a prior lawful act. *Id*. at 944.

> Under the reasoning of *C.L.* [*v. State,* 2 N.E.3d 798, 801 (Ind. Ct. App. 2014)] [4] and *Causey*, no defendant can be convicted of intimidation if he has the presence of mind to explicitly use conditional language in the course of communicating his threat to another. But that is an unreasonable interpretation of our intimidation statute. Threats are, by definition, expressions of an intention to do a future thing, and, thus, to some degree, all threats are conditional. *See* I.C. § 35-45-2-l(d). And once the facts demonstrate that the defendant communicated a threat, the only question left is whether the defendant did so "with the intent" to place the victim "in fear of retaliation for a prior lawful act." I.C. § 35-45-2-1(a)(2). Mere use of conditional language in the course of communicating a threat does not vitiate the statute's application when the factual predicate for the threat was a prior lawful act of the victim. Stated another way, the language a defendant uses in communicating a threat may be relevant to the fact-finder's assessment of the defendant's intent, but the language used is not the only relevant consideration.

*Id*. Our supreme court granted transfer, specifically adopted and incorporated this rationale, and affirmed Roar's intimidation conviction. *Roar*, 54 N.E.3d at 1002.

---

[4] When *Roar* was decided, *Causey* was the only published case to rely on *C.L.*, 2 N.E.3d at 801, in which another panel of this Court held that a defendant's statements that he would beat up the victim if he did not get his money or if he got caught were conditional and aimed at future conduct and therefore did not support a finding that the defendant intended to place the victim in fear of retaliation for prior acts.

[14] As stated in *Roar*, threats are by nature expressions of intent to do future acts, which means they will always be conditional to one degree or another. This is where the "fear of retaliation" element comes into play, with the victim being placed in a situation where, if he does or does not do a certain act, he fears that he will receive a negative consequence at the hands of the perpetrator. This is precisely the kind of conduct that the intimidation statute seeks to prevent. In sum, Montooth's threats indicated his intent to place the deputy in fear of retaliation for his prior lawful act of arresting and holding him. As such, the evidence is sufficient to support Montooth's intimidation conviction. Accordingly, we affirm.

[15] Affirmed.

Vaidik, C.J., and Mathias, J., concur.