

FILED

Jul 22 2016, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Santiago Valdez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 22, 2016

Court of Appeals Case No.
18A02-1509-CR-1514

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge

Trial Court Cause No.
18C02-1204-FB-3

**Baker, Judge.**

[1] Santiago Valdez appeals his convictions for Class B Felony Attempted Rape[1] and Class C Felony Criminal Confinement.[2] He argues that the trial court made evidentiary errors and that the State engaged in prosecutorial misconduct. During closing arguments, the prosecutor hinted to the jury that the defense counsel improperly influenced an expert witness outside of the trial. We find that these statements constituted prosecutorial misconduct, but that a prompt admonishment from the trial court prevented Valdez from being placed into grave peril. We also find that the trial court did not make evidentiary errors. Consequently, we affirm.

## Facts[3]

[2] On April 7, 2012, Valdez was at the Muncie home of his sister, C.V. He had been drinking alcohol and smoking crack. C.V. was on the phone with her uncle when she heard Valdez utter an obscenity. She ended the phone call with her uncle and walked toward Valdez.

[3] At this point, C.V. realized that Valdez had taken off his pants and underwear. She immediately phoned the police because, as she testified later, "I knew he

---

[1] Ind. Code §§ 35-42-4-1, 35-41-5-1.

[2] Ind. Code § 35-42-3-3.

[3] We held oral argument in this case in Bloomington, Indiana, on June 28, 2016. We would like to thank the Commissioners of Monroe County for allowing us usage of the Nat U. Hill Memorial Courtroom in the beautifully restored Monroe County Courthouse. We would also like to thank the Center on Representative Government at Indiana University, and in particular Dr. Elizabeth Osborn, for their hospitality and participation. Finally, we thank counsel for their engaging and informative oral advocacy.

was going to try something with me." Tr. p. 695. Before she was able to speak to the police dispatchers, Valdez walked over to her, pushed her on the couch, and got on top of her. C.V. left the phone on and was able to kick it under the couch where Valdez could not see it.

[4] The police dispatcher could hear the ensuing struggle and recorded it. On the recording, Valdez says things like "we gonna f***," "come on with it," "shut your mouth," and "take your top off." *Id.* at 723. C.V. can be heard crying and saying "Oh my God," and "please help me." *Id.* at 723-24. During the struggle, Valdez took off C.V.'s shirt, pants, and underwear.

[5] A police officer came to the house. When C.V. opened the door, the officer noticed that C.V. was wearing only one sock and Valdez was naked from the waist down. C.V. told the officer, "He's trying to rape me." *Id.* at 734. Valdez calmly told the officer "that everything was fine." *Id.* The officer arrested Valdez.

[6] On April 12, 2012, the State charged Valdez with attempted rape, a Class B felony; criminal confinement, a Class C felony; attempted incest, a Class C felony; intimidation, a Class D felony; and battery, a Class A misdemeanor. The State eventually dropped the attempted incest and battery charges.

[7] On July 13, 2012, Valdez filed a suggestion of insanity, alleging that he was a former boxer who had suffered repeated blows to the head. Valdez began

writing dozens of pro se "motions" to the trial court,[4] including a motion to represent himself. The trial court denied his motion to represent himself, finding that he was not mentally competent, and Valdez filed an interlocutory appeal on that issue. We affirmed the trial court's decision to deny his motion to represent himself in a memorandum decision. *Valdez v. State*, No. 18A05-1407-CR-304 (Ind. Ct. App. Jan. 22, 2015).

[8] The case was remanded to the trial court, and on June 3, 2015, the State notified the trial court that it intended to present evidence of previous criminal activity covered by Indiana Evidence Rule 404(b). In 1993, Valdez was convicted in Monroe County of rape and confinement, and was sentenced to twenty-three years. After a hearing, Valdez agreed that his prior convictions should be presented because he believed they were relevant to his insanity defense. The parties agreed on the following limiting instruction: "This evidence has been received solely on the issue of Defendant's sanity. This evidence should be considered by you only for that limited purpose." Appellant's App. p. 244. However, the jury never received this instruction.

[9] On July 20-23, 2015, Valdez was tried before a jury. At trial, Valdez repeatedly attempted to put into evidence a Pre-Sentence Investigation Report from the 1993 Monroe County trial, which included reports of psychological evaluations

---

[4] As an example of the typical contents of these motions, Valdez alleged that prison guards were denying him medical treatment "because they say I look normal. However, I am being cut up inside and electronically and bleeding." Interloc. App. p. 525.

done in 1986 and 1987 in connection with a criminal case from Arizona ("Defense Exhibit M"). He also attempted to put into evidence a police report from the 1993 case in which the victim told police that Valdez would not sleep for fear that people were hiding in his closet or attic or were watching him through his windows ("Defense Exhibit N"). The trial court agreed with the State that these documents constituted hearsay and lacked a proper foundation, and so denied Valdez's attempt to admit them into evidence.

[10]  During closing arguments, the State tried to convince the jury that a defense witness, Dr. Javan Horwitz, was not credible when he testified that Valdez could not understand the wrongfulness of his actions. The State argued the following:

> This was supposed to be an independent evaluation on the up and up. I'll just tell you I'll call it as I see it. But, what's going on here? The Defense is controlling the information that this alleged expert is looking at. I wonder why the Defense didn't want Doctor Horwitz to hear that record. I wonder why. Then remember that as of Friday he wasn't sure if he denied having an opinion, like we talked about. Interestingly, he comes into open Court . . . and now he surprisingly has an opinion on insanity. Who's the only person Horwitz talked to after he hung up the phone with me and said, "I didn't have an opinion"? Mr. Wieneke, the Defense attorney. So he went from I don't have an opinion to he's legally insane. And what's the common—what changed from Friday to Wednesday? He talked to the Defense.

Tr. p. 1423. Valdez immediately objected and moved for a mistrial. The trial court told the State, "I understand his complaint about it because you are impugning his character." *Id.* at 1424. The trial court did not grant the

mistrial, but did sustain the objection. It admonished the jury not to take the State's statements on this issue as evidence, and informed them that earlier testimony, outside the presence of the jury, had established that the defense had not told Dr. Horwitz what to say.

[11] The jury found Valdez guilty as charged. On August 20, 2015, the trial court held a sentencing hearing and sentenced Valdez to twenty years for attempted rape and eight years for criminal confinement, with those sentences to be served consecutively. The trial court vacated the intimidation count based on double jeopardy concerns. Valdez now appeals.

## Discussion and Decision

[12] Valdez has four arguments on appeal: 1) the trial court should have admitted the documents from his 1993 case; 2) since the jury did not find that Valdez was insane or mentally ill, he should have been allowed to represent himself from the beginning of the case; 3) the trial court should have given a limiting instruction regarding Valdez's 1993 conviction; and 4) the State committed reversible error when it suggested that the defense told a witness what to say.

## I. Admission of Evidence

[13] Trial courts have broad discretion to admit or exclude evidence, and our review is limited to whether the trial court went beyond the scope of that discretion. *Satterfield v. State*, 33 N.E.3d 344, 352 (Ind. 2015). We consider all the facts and circumstances surrounding the trial court's decision to determine whether it is

clearly against the logic and effect of what those facts and circumstances dictate. *Id.*

[14] Valdez argues that Defense Exhibits M and N should have been admitted under Evidence Rule 803(8), which provides that the following is not excluded by the rule against hearsay:

> (8) Public Records.
>
>> (A) A record or statement of a public office if:
>>
>>> (i) it sets out:
>>>
>>>> (a) the office's regularly conducted and regularly recorded activities;
>>>>
>>>> (b) a matter observed while under a legal duty to [observe and] report; or
>>>>
>>>> (c) factual findings from a legally authorized investigation; and
>>>
>>> (ii) neither the source of information nor other circumstances indicate a lack of trustworthiness.
>>
>> (B) Notwithstanding subparagraph (A), the following are not excepted from the hearsay rule:
>>
>>> (i) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case;

(ii) investigative reports prepared by or for a public office, when offered by it in a case in which it is a party;

(iii) factual findings offered by the government in a criminal case; and

(iv) factual findings resulting from a special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

[15] Defense Exhibits M and N, however, were never authenticated. Evidence Rule 901 provides, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Even if these documents fell under the language of Evidence Rule 803(8) as public records, that would only save them from exclusion on hearsay grounds; it would not guarantee admission. Valdez produced no evidence at trial to show that these documents were what he said they were.

[16] Valdez also argues that, even if these exhibits were not admissible on their own merits, the State opened the door to their admission. Indiana courts have long recognized that otherwise inadmissible evidence may become admissible if a party opens the door to questioning on that evidence in order to correct a deceptively incomplete disclosure. *Hall v. State*, 36 N.E.3d 459, 471 (Ind. 2015). In order for this to occur, the party opening the door "must leave the trier of

fact with a false or misleading impression of the facts related." *Gilliam v. State*, 270 Ind. 71, 76-77, 383 N.E.2d 297, 301 (1978).

[17] At trial, the State repeatedly told the jury that Valdez had no history of mental illness or delusional beliefs, and that he began faking these symptoms after he was arrested in the present case. In the State's opening statement, it told the jury, "I believe the evidence will show you [] that there's no history of mental illness with this Defendant. Prior to being arrested and jailed and awaiting trial, there's no evidence, no history of mental illness, no history of hearing voices, no history of delusional beliefs." Tr. p. 679. The State developed this theme during the trial. The State asked Dr. Frank Krause, "So the only thing that you're aware of is that he started hearing things and had these paranoid beliefs after he was arrested and booked in the jail in this case, is that accurate?" *Id.* at 940. Dr. Krause agreed. The State asked Dr. Christopher Modica, "Prior to being arrested and booked into jail, there was no evidence of prior hallucinations or delusions? . . . And all that started after his arrest?" *Id.* at 1003. Dr. Modica agreed. Similar exchanges occurred with several other expert witnesses, and each time Valdez sought to admit his exhibits.

[18] We note that neither a history of mental illness, nor a history of hearing voices, nor a history of delusional beliefs is the same as being insane. The test for insanity is whether, "as a result of mental disease or defect, [the accused] was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind. Code § 35-41-3-6. However, the State attempted to prove that Valdez was

not insane at the time of the offense by arguing that he had no history of mental illness, and thereby put the issue into contention.

[19]     We agree with Valdez that, assuming Exhibits M and N are what they purport to be, the State created a very misleading picture of Valdez's history of mental illness. While the State claimed that Valdez had no history of mental illness, Valdez's Defense Exhibit M reports that a Dr. Thomas evaluated Valdez roughly thirty years ago and concluded that the "probable mental condition of the Defendant at the time of the Armed Robberies was that of major affective disorder, bipolar." At roughly the same time, a Dr. John Mitchell is reported as concluding that Valdez had "borderline personality disorder." A Dr. Donald Tator is reported as concluding that Valdez was "suffering from a bipolar disorder, manic type, manifested primarily by delusions of grandeur and persecution." *Id.* And, while the State told the jury that Valdez had no history of delusional beliefs, Defense Exhibit N reports statements from the victim in Valdez's 1993 case: "he had become a problem because he would stay awake at all hours of the night stating that people were watching him through the windows, hiding in closets, hiding in the attic, etc. and insisted on having all the lights on in the house at all times."

[20]     Despite these apparent inconsistencies, Valdez's argument is ultimately unavailing. When analyzing whether a party has opened the door to evidence, our case law focuses on the admission of "otherwise inadmissible evidence," *Hall*, 36 N.E.3d at 471, but has not focused on why a piece of evidence would otherwise be inadmissible. Courts have previously found that a party can open

the door to evidence that would have been excluded under the Fifth Amendment, *Ludack v. State*, 967 N.E.2d 41 (Ind. Ct. App. 2012); excluded under the Rape Shield Rule, *Hall*, 36 N.E.3d at 471; excluded as hearsay, *Turner v. State*, 953 N.E.2d 1039 (Ind. 2011); excluded as evidence of prior bad conduct, *Reese v. State*, 939 N.E.2d 695 (Ind. Ct. App. 2011); excluded as silence after a *Miranda*[5] warning, *Barton v. State*, 936 N.E.2d 842 (Ind. Ct. App. 2010); excluded as character evidence, *Clark v. State*, 915 N.E.2d 126 (Ind. 2009); and excluded as evidence from a polygraph test, *Majors v. State*, 773 N.E.2d 231 (Ind. 2002).

[21] But we find that evidence excluded for want of authentication poses a special problem for a party seeking its admission. The reason for its exclusion is that the party has not yet provided sufficient evidence to "support a finding that the item is what the proponent claims it is." Evid. R. 901(a). Even after the adverse party makes a claim that is inconsistent with this evidence, the deficiency of a lack of authentication remains. Put another way, our Supreme Court directs our inquiry toward whether the adverse party's evidence "leave[s] the trier of fact with a false impression of the facts related," *Hall*, 36 N.E.3d at 471, but a lack of authentication means that the trial court is not convinced that the proposed evidence is factual. Indeed, that is one of the purposes of

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Evidence Rule 901: to ensure that nonfactual information does not enter into evidence.

[22] Finally, we note that these exhibits, while not allowed into evidence, did play a role at trial. The trial court read a stipulation to the jury that Valdez underwent mental health evaluations in 1986 and 1987. Tr. p. 954-55. Moreover, Valdez was able to show Defense Exhibits M and N to three expert witnesses to try to change their opinions. In one case, it appears that Valdez was successful; after showing the exhibits to Dr. Horwitz, Dr. Horwitz testified, "I think it would help to explain to the jury that this has been a long standing mental illness that has been well covered up by Mr. Valdez . . . but there's evidence of it even in this report from 1993." Tr. p. 1147.

[23] In sum, the lack of authentication prevented the admission of these exhibits, either directly or to address a topic to which the State opened the door. The trial court committed no error in this regard.

## II. Self-Representation

[24] Valdez has previously argued that he should be allowed to represent himself, and has already lost on that issue in an interlocutory appeal. *Valdez v. State*, No. 18A05-1407-CR-304 (Ind. Ct. App. Jan. 22, 2015). His argument for the current appeal centers on several allegedly inconsistent positions taken by the State.

[25] For example, in the interlocutory appeal, the State relied heavily on Dr. Horwitz's testimony to argue that Valdez was not mentally competent to

represent himself. At trial, however, the State attacked Dr. Horwitz for his testimony: "he came in here and tried to dazzle everybody with his big words and long winded answers and hoping that everybody would think he is legit. But, the facts show that he's not." Tr. p. 1434. Valdez argues that he cannot be considered mentally ill for purposes of his right to represent himself and not mentally ill when being convicted.

[26] As for Valdez's right to represent himself, that issue is settled by the law of the case doctrine, "a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially the same facts." *Cutter v. State*, 725 N.E.2d 401, 405 (Ind. 2000). We will not revisit the issue because Valdez has failed to show additional information to distinguish this appeal from his first appeal. *Wells v. State*, 2 N.E.3d 123, 128-29 (Ind. Ct. App. 2014).

[27] Moreover, Valdez has conflated the standard for declaring someone mentally incompetent to represent himself and the standard to find someone insane. The test for the former is whether the defendant is "mentally competent to stand trial but suffers from severe mental illness to the point where he is not competent to conduct trial proceedings by himself." *Edwards v. State*, 902 N.E.2d 821, 824 (Ind. 2009). The test for the latter is whether, "as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind. Code § 35-41-3-6. There is no inconsistency between the earlier finding that Valdez is not mentally competent to represent himself and the jury's determination that he was not insane when

he committed the present crime, and Valdez has not pointed to any new information that would cause us to revisit his right to represent himself. Therefore, we decline to reverse on this basis.

# III. Limiting Instruction

[28] Valdez argues that the trial court should have issued an admonishment not to use his 1993 conviction as evidence of guilt in this case. Without such an admonishment, Valdez argues, the jury could have used that previous conviction to create an inference of bad character and guilt.

[29] This argument is unavailing. A trial court does not have an affirmative duty to issue admonishments or limiting instructions sua sponte. *Humphrey v. State*, 680 N.E.2d 836, 839 (Ind. 1997). The parties agreed that the conviction would come into evidence and agreed on the language of an admonishment to the jury to consider the previous conviction only for limited purposes. However, when the moment arrived, Valdez did not request the admonishment to be read, and explicitly told the trial court that he had no objection. Likewise, he declined to have any limiting instruction read after a video deposition mentioned the previous conviction. Finally, he declined to request a limiting instruction regarding the conviction during final instructions. In short, Valdez had ample opportunity to have the admonishment read to the jury, and declined. Therefore, this argument has been waived.

# IV. Prosecutorial Misconduct

[30] Valdez argues that Chief Trial Deputy Prosecutor Eric Hoffman committed prosecutorial misconduct by insinuating that defense counsel influenced Dr. Horwitz's testimony. Valdez argues that Deputy Prosecutor Hoffman violated Indiana Professional Conduct Rule 3.4, which provides the following:

> a lawyer shall not: . . . (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of the accused.

[31] As noted above, Deputy Prosecutor Hoffman hinted that the defense had told Dr. Horwitz to change his testimony, despite there being no evidence in the record on this point. In fact, the parties had discussed the issue earlier in the trial outside the presence of the jury. Tr. p. 1094-1106. The State attempted to have Dr. Horwitz disqualified from testifying. The trial court denied the State's request, and Dr. Horwitz testified that he did not receive any instructions from the defense counsel. Not only did Deputy Prosecutor Hoffman not have evidence that the defense coached the witness, he heard explicit testimony denying that this was the case.

[32] Our Supreme Court has detailed the inquiry surrounding prosecutorial misconduct: we inquire (1) whether misconduct occurred, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a

position of grave peril to which he should not have been subjected. *Ryan v. State*, 9 N.E.2d 663, 667 (Ind. 2015). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

[33] As for the first element of our review, we find that the prosecutor engaged in misconduct in this case. The Preamble to the Indiana Rules of Professional Conduct states, "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials." Our Supreme Court has long held that it "goes scarcely without saying that it is highly prejudicial and unethical for one attorney to attack personally opposing counsel with the hope that he may thereby prejudice the jury against the case of the party represented by such counsel." *Loveless v. State*, 240 Ind. 534, 542, 166 N.E.2d 864, 868 (1960). More recently, our Supreme Court has cautioned that it "is highly improper for counsel to attempt to impinge the integrity of opposing counsel." *Splunge v. State*, 641 N.E.2d 628, 630-31 (Ind. 1994). Although the State argues that Deputy Prosecutor Hoffman was simply recounting a series of events, the trial court found that these statements impugned defense counsel's character. Tr. p. 1424. We agree.

[34] As to the second element of our review, Valdez argues that he was placed in grave peril by this statement. Although the trial court admonished the jury, Valdez contends that "an admonishment could never adequately cure the peril inflicted by the State's improper argument." Appellant's Br. p. 31. This is because Dr. Horwitz was the one expert witness who testified that Valdez was

insane at the time of the crime, and so using an improper method to discredit Dr. Horwitz's testimony was extremely detrimental to Valdez's defense.

[35] Our case law makes clear that we cannot reverse Valdez's conviction because the State's conduct did not place him in grave peril. The trial court immediately gave an admonishment to the jury, and we are obliged to presume "that the jury are [people] of sense, and that they will obey the admonition of the court." *Thomas v. State*, 9 N.E.3d 737, 743-44 (Ind. Ct. App. 2014). We must presume that the jury forgot Deputy Prosecutor Hoffman's insinuation because the trial court told them to forget it. "Admonishments and reprimands are presumed to have cured the misconduct of a prosecutor." *Hubbard v. State*, 262 Ind. 176, 181, 313 N.E.2d 346, 350 (1974).

[36] We would like to recognize the difficult position the defense counsel faced in this case. His client did not want to be represented by counsel and thought that he should be representing himself. The best defense that counsel could argue was that Valdez was insane, yet Valdez himself repeatedly testified that he was not insane. Tr. p. 812-17. When defense counsel attempted to question Valdez at trial, Valdez continually wandered off topic, expounding on the conspiracy he believed was attempting to put him in jail, and drew an admonishment from the trial court to provide responsive answers. Once, Valdez even objected to his own counsel's question. Tr. p. 817.

[37] Defense counsel found only one expert witness to testify that Valdez was insane. Of course, Deputy Prosecutor Hoffman was perfectly entitled to argue

against Dr. Horwitz's conclusions, or attempt to convince the jury that Dr. Horwitz "came in here and tried to dazzle everybody with his big words . . . ." Tr. p. 27. But to insinuate that defense counsel improperly influenced his testimony, particularly where the trial court heard evidence on the issue and the only evidence on the issue showed that defense counsel did not do so, was extremely inappropriate. Our adversarial system of justice can only function when based on a certain level of respect and decorum, and will quickly break down if attorneys hurl wild, baseless accusations of misconduct at each other. To engage in such conduct is to enter a race to the bottom, where the attorneys who are willing to make such accusations against other attorneys will sound authentic and honest (Deputy Prosecutor Hoffman made sure to preface his misconduct with, "I'll just tell you I'll call it as I see it," tr. p. 1423), while more circumspect and honorable attorneys who are not willing to make such accusations will sound like they are hiding something. We cannot countenance a trial environment in which respectful attorneys have an inherent disadvantage. We admonish Mr. Hoffman to refrain from such conduct in the future.

[38] The judgment of the trial court is affirmed.

Najam, J., and May, J., concur.