## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 02 2019, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J.H.,
*Appellant-Respondent,*

v.

State of Indiana,
*Appellee-Petitioner.*

October 2, 2019

Court of Appeals Case No.
18A-JV-2608

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge

The Honorable Geoffrey Gaither, Magistrate

Trial Court Cause No.
49D09-1807-JD-861

**Robb, Judge.**

# Case Summary and Issues

[1] The juvenile court adjudicated J.H. a delinquent child for actions which, if committed by an adult, would constitute criminal recklessness, a Level 6 felony, and criminal mischief, a Class B misdemeanor. The juvenile court placed J.H on probation and discharged him to the custody of the Department of Child Services ("DCS") for placement at Gibault Children's Services ("Gibault"). J.H. challenges his adjudication raising two issues for our review: 1) whether the State presented sufficient evidence to support the true finding for criminal recklessness, and 2) whether the trial court abused its discretion in admitting hearsay testimony. Concluding the State presented sufficient evidence for criminal recklessness, and the juvenile court did not abuse its discretion in admitting hearsay testimony, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the juvenile court's judgment are that Jeremy Huffer ("Father") is the biological father of J.H., born September 4, 2003. On July 27, 2018, J.H. asked Father if he could visit some friends. Father denied his request and, as a result, J.H. became "out of control at the house." Transcript of Evidence, Volume II at 9. J.H. engaged in unruly behavior: he attempted to grab Father's money and cell phone while Father was talking with J.H.'s probation officer on the phone; he threw spittoon on Father; he destroyed Father's scooter and air conditioner; and he sprayed Father with a water hose.

Father called the police. Officers arrived and de-escalated the situation but left without taking further action.

[3] Subsequently, a similar scenario occurred. J.H. became aggressive with Father by throwing and destroying furniture. J.H then went outside, retrieved a blow torch and reentered the home. J.H. stood "[a] foot" away from Father holding the blow torch. Tr., Vol. II at 18. Father testified, "[J.H.] said…he would burn me with it or [J.H.] would burn me up with it." *Id*. at 17. Father and J.H. testified that the blow torch was not lit. *See Id*. at 17, 43. J.M., who is the daughter of Father's girlfriend testified the blow torch was lit; J.H. did not object or conduct a cross-examination on this assertion. *See Id*. at 26-27. Father tried to smack the blow torch out of J.H.'s hand. J.M. called the police because she was afraid. Officers arrived on the scene, but could not locate J.H. A nearby neighbor informed officers that J.H. was hiding under her tarp, where officers arrested J.H.

[4] On July 30, the State filed a delinquency petition alleging J.H. had committed acts that would constitute criminal recklessness, a Level 6 felony, and criminal mischief, a Class B misdemeanor, if committed by an adult.[1] On August 23, 2018, the juvenile court held a fact-finding hearing. Reporting Officer Cory Drum testified to her investigation of the incident. On cross-examination, J.H.

---

[1] The State also alleged that J.H. committed domestic battery and battery resulting in bodily injury, both Class A misdemeanors. *See* Appellant's Appendix, Volume II at 24-25. The juvenile court entered a not-true finding as to these allegations. *See Id*. at 58.

showed Officer Drum her probable cause affidavit and asked if she included in her report "any threat" made by J.H. against Father. Tr., Vol. II at 34. Officer Drum testified that she did not. *Id.* On re-direct examination, J.H. objected on grounds of hearsay when the State, referring to the probable cause affidavit, asked Officer Drum, "And what was the order of the events in regards to the blow torch?" *Id*. The juvenile court overruled the objection essentially reasoning that the officer was testifying to what she wrote. The State then asked, "What was the order, according to what you wrote?" *Id*. at 36. Officer Drum answered that Father

> had been hit by a fan or a chair and then his son came at him with a blow torch and he told me that it was lit and . . . he told him not to take another step and then [J.H] took another step and then that is when he grabbed the belt to defend himself[.]

*Id*. The juvenile court entered a true finding against J.H. for criminal recklessness, a Level 6 felony, and criminal mischief, a Class B misdemeanor, if committed by an adult. The juvenile court released J.H. to the care and custody of DCS for placement at Gibault and ordered J.H. to complete the plan of care and rehabilitation treatment at Gibault. J.H. now appeals.

# Discussion and Decision

## I.  Criminal Recklessness

[5]     J.H. contends there is insufficient evidence to support his true finding of criminal recklessness. Specifically, he argues the State failed to show the blow

torch was a deadly weapon and that J.H. placed Father at substantial risk of bodily injury. *See* Brief of the Appellant at 14.

[6] When reviewing claims for insufficient evidence in a juvenile delinquency adjudication, we neither reweigh the evidence nor judge witness credibility, and we only consider the evidence and reasonable inferences favorable to the judgment. *B.R. v. State*, 823 N.E.2d 301, 306 (Ind. Ct. App. 2005). We will affirm the adjudication unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Evidence is sufficient if an inference may be reasonably drawn from it to support the judgment. *Id*. at 147.

[7] To adjudicate J.H. a delinquent child for committing criminal recklessness as a Level 6 felony, the State needed to prove beyond a reasonable doubt that he recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to Father, and he committed such act while armed with a deadly weapon. Ind. Code § 35-42-2-2.

[8] J.H. challenges his criminal recklessness conviction by asserting that he did not use a deadly weapon and that it did not create a substantial risk of bodily harm to Father. "Deadly weapon" is defined as:

> (1) a loaded or unloaded firearm,
>
> (2) a destructive device, weapon, device, taser, or electronic stun weapon, equipment, chemical substance, or other material that in the manner it:

(A) is used;

(B) could ordinarily be used; or

(C) is intended to be used;

is readily capable of causing serious bodily injury.

Ind. Code § 35-31.5-2-86. In determining whether an instrument is a deadly weapon, we look to the *capacity* of the object to inflict serious bodily injury under the factual circumstances of the case. *Phelps v. State*, 669 N.E.2d 1062, 1063 (Ind. Ct. App. 1996) (emphasis added).

[9]     Here, the State presented sufficient evidence to support the true finding for criminal recklessness. During their confrontation, J.H. retrieved a blow torch and approached Father with it. Father testified that J.H. stood "[a] foot" away from him holding the blow torch and J.H said, "he would burn me with it." Tr., Vol. II at 17-18. Our review reveals that there is conflicting testimony by J.H., Father, and J.M. whether the blow torch was lit or not. J.H. argues that the only two people involved in the confrontation testified that the blow torch was not lit, and we should not consider J.M's testimony that it was lit. *See* Br. of the Appellant at 16. But this argument is, essentially, a request that this court assess witness credibility and reweigh the evidence in his favor, which is the role of the fact-finder, not the role of this court. *See B.R.*, 823 N.E.2d at 306. Even if the blow torch was not lit, it could have ordinarily been used if J.H. turned the gas knob and pushed a button to ignite it. Based on this, the blow torch would

constitute a deadly weapon that was capable of inflicting serious bodily injury to Father regardless of whether it was lit or not. The evidence most favorable to the judgment is that J.H. used the blow torch, which is considered a deadly weapon within the meaning of the statute. *See id.* Given the circumstances of this case, a reasonable fact-finder could conclude that J.H. intended to cause harm to Father and therefore, there is sufficient evidence to adjudicate J.H. as a delinquent for criminal recklessness.

## II.  Admission of Hearsay

Next, J.H. argues the juvenile court abused its discretion by permitting Officer Drum to testify regarding the substance of her probable cause affidavit that was inadmissible under Indiana Rules of Evidence 803(8)(B)(i). Specifically, he argues the admission of Officer Drum's testimony was prejudicial because her affidavit contained statements by Father inconsistent with his testimony at the fact-finding hearing. The State maintains that even if Officer Drum's testimony were inadmissible, it is harmless error. We agree.

The admission of evidence is a matter left to the sound discretion of the juvenile court, and a reviewing court will reverse only upon an abuse of discretion. *B.K.C. v. State*, 781 N.E.2d 1157, 1162 (Ind. Ct. App. 2003). Although the rules of evidence do not apply to preliminary juvenile proceedings, they do apply to fact-finding hearings in juvenile delinquency proceedings. *See N.L. v. State*, 989 N.E.2d 773, 779 (Ind. 2013). We consider all facts and circumstances surrounding the trial court's decision to determine whether it is "clearly against

the logic and effect" of what those facts and circumstances dictate. *Satterfield v. State*, 33 N.E.3d 344, 352 (Ind. 2015). However, if a trial court abused its discretion by admitting the challenged evidence, we will only reverse for that error if the error is inconsistent with substantial justice or if a substantial right of the party is affected. *Allen v. State*, 994 N.E.2d 316, 319 (Ind. Ct. App. 2013).

[12] Here, J.H. conducted a cross-examination of Officer Drum at the fact-finding hearing, where she testified to her investigation of the event. J.H. showed Officer Drum her affidavit and asked if she included "any threat" in her report, which she affirmed that she did not. On re-direct, Officer Drum testified, over objection, to the substance of her affidavit that indicated J.H. went after Father with a blow torch that was lit. *See* Tr., Vol. II at 36. We acknowledge that investigative reports by police officers and other law enforcement personal, except when offered by an accused in a criminal case are not an exception to the hearsay rule. *See* Ind. Evid. R. 803(8)(B)(i). But based on our review, Officer Drum's testimony on re-direct did not implicate the initial hearsay inquiry, that is, whether an out of court statement is offered for the truth of the matter asserted. *See* Ind. Evid. R. 801(c)(2). The State contends Officer Drum's testimony was not hearsay because it was not offered for its truth, but rather to rebut J.H.'s suggestion that Father had not reported a threat. We agree that the reference to her affidavit merely clarified a similar question that J.H. asked on cross-examination. Indiana courts have long recognized that otherwise inadmissible evidence may become admissible if a party opens the door to questioning on that evidence in order to correct a deceptively incomplete

disclosure. *Valdez v. State*, 56 N.E.3d 1244, 1249 (Ind. Ct. App. 2016), *trans. denied*. Because J.H. opened the door to questioning about Officer Drum's failure to include the presence of a threat in her affidavit, the State was permitted to elicit Officer Drum's reference to the otherwise inadmissible evidence to correct this "false or misleading impression" that could have been left on the juvenile court. *Id*. Officer Drum's affidavit implicitly demonstrates that a threat was present when J.H. approached Father with a blow torch. The main purpose for the reference to her affidavit was to simply correct any incomplete disclosure that J.H. presented to the juvenile court that Father had not reported a threat. Thus, the juvenile court did not abuse its discretion in allowing Officer Drum to testify to the contents of her affidavit.

## III. Harmless Error

[13] Even if Officer Drum's testimony was inadmissible, we conclude that any error was harmless. This court will not reverse for an "erroneous admission of hearsay . . . unless it prejudices the defendant's substantial rights." *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014). To determine whether an evidentiary error was prejudicial, we assess the probable impact the evidence had upon the trier of fact in light of all of the other evidence that was properly presented. *Id*. If this court is satisfied the conviction, or, in a juvenile case, true finding, is supported by substantial independent evidence of guilt that there is little likelihood the challenged evidence contributed to the conviction or true finding, then the error is harmless. *R.W. v. State*, 975 N.E.2d 407, 412 (Ind. Ct. App. 2012), *trans. denied*. J.H. argues that this evidence significantly prejudiced him

solely because both him and Father testified at the hearing that the tool was unlit. Specifically, he contends whether the blow torch was lit is a critical point. We reject this contention because we have already determined above that a blow torch is a deadly weapon regardless of it being lit or not.

[14] Still, regardless of whether Officer Drum's reference to her affidavit was inadmissible, the evidence was merely cumulative of other evidence presented by the State. Everything stated in her affidavit had already been admitted into evidence through prior witnesses. Both J.H. and Father testified that an altercation clearly occurred between the two and that J.H. had a blow torch near Father. In addition, J.M. testified and corroborated the sequence of events regarding the blow torch, which J.H. did not object to or conduct a cross-examination on. So, this court is satisfied that J.H.'s adjudication is supported by independent evidence of guilt and, as a result, any error in the admission of Officer Drum's testimony regarding her affidavit was harmless and reversal is not required. *See Craig v. State*, 630 N.E.2d 207, 211 (Ind. 1994).

[15] In sum, J.H. would certainly be adjudicated for the act of criminal recklessness without Officer Drum's re-direct testimony; thus, we cannot say the juvenile court abused its discretion when it permitted Officer Drum to testify from her affidavit.

# Conclusion

The State presented sufficient evidence to support a true finding for criminal recklessness, and the juvenile court did not abuse its discretion in admitting hearsay testimony. Therefore, we affirm J.H.'s delinquency adjudication.

Affirmed.

Mathias, J., and Pyle, J., concur.