## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2016, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Kidwell,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

December 9, 2016

Court of Appeals Case No.
15A04-1511-CR-1972

Appeal from the Dearborn
Superior Court

The Honorable Sally A.
McLaughlin, Judge

Trial Court Cause No.
15D02-1212-FB-76

**Brown, Judge.**

[1] John Kidwell appeals his convictions for burglary and conspiracy to commit burglary as class B felonies. Kidwell raises two issues which we revise and restate as:

> I.   Whether the court committed fundamental error in permitting the State to amend the charging information to include an habitual offender allegation; and
>
> II.  Whether the court erred by denying Kidwell's motion for a mistrial.

We affirm.

### Facts and Procedural History

[2] On December 3, 2012, around noon, James Fishburn was taking a nap in the walk-out basement of his Lawrenceburg home. A loud banging sound from his back door woke him up, and he walked to his garage to investigate. When he opened the garage door, he saw a gold-colored pickup truck parked nearby. The truck immediately began honking and backing away from the house. As the truck started to drive off, Fishburn saw a man run out from behind his house and jump in the truck, and the truck left the scene. As Fishburn dialed 911, he saw another man run from his house into the woods. Fishburn relayed the description of the men and the truck to the police.

[3] The police saw the gold-colored pickup truck, but it initially evaded capture. When the police found it, it had left the road, crashed into a tree, and been abandoned.

[4] Meanwhile, the police maintained a lookout near the woods behind Fishburn's house. After an hour, a man emerged from the woods, covered in briars and

sweat and matching the description given by Fishburn. When asked, the man identified himself as Eric Taulbee and said he was looking for a place to hunt. He told the police that he was trying to meet up with some friends in a gold-colored pickup truck near US 50, and the officer noted that Taulbee was walking in the opposite direction. The officer took Taulbee back to the Fishburn residence. While en route, the officer received a photograph of the registered owner of the pickup truck, Shawn Kidwell, which he showed to Taulbee. The officer told Taulbee that Shawn had been arrested. They arrived at the Fishburn house, where Fishburn confirmed that he had seen Taulbee. The officer also found boot prints outside the residence matching Taulbee's boots. Taulbee confirmed that he had been near the residence, but maintained that he was looking for a place to hunt, confirmed that Shawn had been with him, and named the third man as "Chris Stevens." Transcript at 508. Taulbee was then arrested.

[5] The police searched Taulbee's phone and social media accounts but could not find anyone named Chris Stevens. About a week after his arrest, Taulbee told the police that he had committed the burglary with Shawn and Shawn's brother, John Kidwell. He admitted that he had made up the name Chris Stevens.

[6] In December 2012, the State charged Kidwell, Shawn, and Taulbee with Count I, burglary as a class B felony; and Count II, conspiracy to commit burglary as a class B felony. In 2013, Shawn and Taulbee each pled guilty to the burglary

charge and agreed to provide testimony against Kidwell, who remained at large until November 2014.

[7] Kidwell was brought to trial on June 15 and 16, 2015, but the jury deadlocked and was unable to reach a verdict and the court declared a mistrial. The following month, before Kidwell's second trial, the State moved to amend the charging information to include an allegation that Kidwell was an habitual offender based on two prior felony burglary convictions in Ohio. Kidwell did not object. The trial court granted the motion, and his second trial took place on August 18 and 21, 2015.

[8] At trial, Shawn testified that he, Taulbee, and Chris Stevens, who was Taulbee's "buddy or whatever," came to Indiana from Ohio for the purpose of knocking on people's doors and then leaving. *Id.* at 325. When confronted with his testimony from his 2013 guilty plea—in which he admitted that he, Taulbee, and his brother committed the burglary—he claimed that Chris Stevens was his "patch brother." *Id.* at 337. Shawn testified that this referred to a gang affiliation and that he had since left the gang.

[9] Taulbee testified that he and the two Kidwell brothers came to Indiana to burglarize houses in order to fund their heroin addiction. He admitted that he initially hid the Kidwells' role in the crime until it became clear that the police had evidence of their involvement, at which point he decided to tell the truth. On cross-examination Taulbee, Kidwell's counsel focused on the inconsistencies in Taulbee's story and attempted to portray him as someone

who would say anything to shorten his incarceration. Specifically, defense counsel asked, "So now you change your story again, eight days later after being locked up and without your heroin, you change it because of no evidence presented to you, correct?" *Id.* at 425. Taulbee responded: "No, I changed it because my mom's house was broken into." *Id.* Defense counsel objected. During the parties' discussion outside the presence of the jury, the trial court noted that in prior depositions, Taulbee had testified that he decided to give information on the Kidwell brothers because he believed that they had burglarized his mother's house. The trial court ruled that, because defense counsel should have known, due to prior hearings and depositions on the matter, that his question would elicit Taulbee's response, it would overrule the objection. Kidwell's request for a mistrial was also denied.

[10] The parties then discussed that the State would ask Taulbee on redirect why the break-in of his mom's house changed his mind and that Taulbee would respond that he was concerned that Shawn and Kidwell were involved. Kidwell's counsel objected to this line of questioning on hearsay grounds, was granted a continuing objection, and requested a mistrial due to "the presentation of evidence that there's implications that he already previously had committed a burglary at . . . his aunt's house." *Id.* at 455. The parties and the court also discussed a limiting instruction. The court overruled his objection and denied his motion for mistrial. The jury was subsequently brought back into the courtroom, the State asked Taulbee its question and Taulbee responded as discussed, and the court gave its limiting instruction as follows:

> The question asked and answered is not evidence of the truth of the matter as stated in the answer and is not to be considered as such and is not to be considered as any evidence that the defendant acted in conformity with the statement provided by the witness but is merely for purpose of the witness' motivation.

*Id.* at 463.

[11] After this testimony, and the introduction of evidence that Kidwell's fingerprint was found on a bottle inside his brother's car, the jury found Kidwell guilty as charged. It also found that he was an habitual offender. The trial court sentenced him to twenty years for each conviction, to be served concurrently, with an additional twenty years for his habitual offender status.

### Discussion

### I.

[12] The first issue is whether the court committed fundamental error in permitting the State to amend the charging information to include a habitual offender allegation because the amendment amounted to vindictiveness by the prosecutor. Kidwell argues that when the State amended its charging information to include a habitual offender allegation, the surrounding circumstances strongly indicate a vindictive motive. Generally, we review a trial court's decision to allow amendment of a charging information in the face of a claim of prosecutorial vindictiveness for an abuse of discretion. *Johnson v. State*, 959 N.E.2d 334, 342 (Ind. Ct. App. 2011), *trans. denied*. Kidwell concedes that he did not object to the State's motion to add a habitual offender allegation

and that accordingly he must show fundamental error. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." *Id.* "This exception is available only in 'egregious circumstances.'" *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)), *reh'g denied*. "Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014), *reh'g denied*.

[13] The Due Process clauses of Article 1, section 12, of the Indiana Constitution and the Fourteenth Amendment to the United States Constitution prohibit prosecutorial vindictiveness.[1] *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098 (1974); *Warner v. State*, 773 N.E.2d 239 (Ind. 2002). A defendant has a due process right "to be free of apprehension that he will be subjected to an increased punishment if he exercises his right to attack his conviction . . . ."

---

[1] Although Kidwell mentions the Indiana Constitution, he does not provide a separate analysis for that provision, nor does he argue that it provides protection different from the federal constitution. Therefore, any separate analysis under the Indiana Constitution is waived. *See Valentin v. State*, 688 N.E.2d 412, 413 (Ind. 1997).

*Cherry v. State*, 275 Ind. 14, 20, 414 N.E.2d 301, 305 (1981). Prosecutorial vindictiveness can occur if "more numerous or more severe charges" are filed against an accused "after the accused has successfully exercised his statutory or constitutional rights to an appeal," unless the prosecution meets the "heavy burden of proving that any increase in the number or severity of the charges was not motivated by a vindictive purpose." *Id.* As with a successful appeal, the same applies to a successful motion for a mistrial: "unless there is new evidence or information discovered to warrant additional charges, the potential for prosecutorial vindictiveness is too great for courts to allow the State to bring additional charges against a defendant who successfully moves for a mistrial." *Warner*, 773 N.E.2d at 243. On the other hand, the United States Supreme Court has noted that "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *United States v. Goodwin*, 457 U.S. 368, 382, 102 S. Ct. 2485, 2493 (1982).

[14] We find our decision in *Sisson v. State*, 985 N.E.2d 1 (Ind. Ct. App. 2012), *trans. denied*, instructive. In that case, the State refiled a firearm charge and a habitual offender allegation, which had been dismissed prior to the defendant's first trial, after that trial ended in a deadlocked jury and a mistrial. *Id.* at 7-8. We distinguished this scenario from the cases in which we found prosecutorial vindictiveness: "the State did not file more numerous or severe charges following a successful appeal; rather, the State refiled previously dismissed counts after Sisson's first trial ended in a mistrial due to jury deadlock." *Id.* at

11. After noting that *Warner* applied this rationale to a successful motion for mistrial, we pointed out that "Sisson did not move for a mistrial in an effort to preserve his right to a fair trial as the result of some error. Rather, the trial court *sua sponte* declared a mistrial, without objection from Sisson or the State, after the jury indicated that it was unable to reach a verdict." *Id.* What we said of Sisson applies equally to Kidwell: "Sisson has not directed our attention to any Indiana cases addressing the application of the presumption of vindictiveness where additional charges are filed after the declaration of a mistrial due to jury deadlock." *Id.*

[15] In this case, there is nothing in the record to suggest that Kidwell was being subjected to a greater sentence as punishment for the exercise of any of his constitutional rights. The doctrine of prosecutorial vindictiveness exists "[i]n order to avoid chilling the exercise of the right to an appeal" or the right to seek a mistrial. *Owens v. State*, 822 N.E.2d 1075, 1077 (Ind. Ct. App. 2005); *Warner*, 773 N.E.2d at 242. Without the doctrine, defendants would be discouraged from challenging misdeeds of the State, which in turn might encourage the State to commit misdeeds. The doctrine and its rationale have little application to a case in which a mistrial resulted not from any improper conduct of the State but rather a deadlocked jury.

[16] Kidwell also argues that the State added the habitual offender charge after the first trial in order to pressure him into a plea agreement. He contends that he is effectively being punished for seeking his right to a fair trial. We disagree. Courts have consistently refused to apply the presumption of vindictiveness to

the "give-and-take" of plea negotiation, an "outcome . . . mandated by [the] acceptance of plea negotiation as a legitimate process." *Goodwin*, 457 U.S. at 378 (finding no prosecutorial vindictiveness where prosecutor filed a felony charge after defendant refused to plead guilty to several misdemeanor charges and requested a trial by jury). Even if we accept as true Kidwell's allegation that the habitual offender charge was intended to pressure him into accepting a plea agreement, the prosecutor's conduct would not be unconstitutional: "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 668 (1978).

[17] We find that there is nothing in the record to raise the presumption of prosecutorial vindictiveness in the habitual offender allegation and that the court's decision to permit the State to amend the charging information and add the habitual offender charge did not amount to fundamental error.

II.

[18] The next issue is whether the court erred by denying Kidwell's motion for a mistrial. "The granting of a mistrial lies within the sound discretion of the trial court, and we reverse only when an abuse of discretion is clearly shown." *Davis v. State*, 770 N.E.2d 319, 325 (Ind. 2002), *reh'g denied*. "The remedy of mistrial is 'extreme,' *Warren v. State*, 757 N.E.2d 995, 998-999 (Ind. 2001), strong

medicine that should be prescribed only when 'no other action can be expected to remedy the situation' at the trial level, *Gambill v. State*, 436 N.E.2d 301, 304 (Ind. 1982)." *Lucio v. State*, 907 N.E.2d 1008, 1010-1011 (Ind. 2009). We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *Alvies v. State*, 795 N.E.2d 493, 506 (Ind. Ct. App. 2003), *trans. denied*. To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.* We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. *Id.*

[19] At trial, the following exchange occurred during the re-cross-examination of Taulbee:

> [Defense Counsel]: Okay and so just recently here in your testimony you said well I just changed my story because then they provided evidence, right?
>
> Mr. Taulbee: Yes.
>
> [Defense Counsel]: So now you change your story again, eight (8) days later after being locked up and without your heroin, you change it because of no evidence presented to you, correct?
>
> Mr. Taulbee: No I changed it because my mom's house was broken into.

Transcript at 425. Kidwell's counsel objected and, outside the jury's presence, argued that Taulbee's answer was non-responsive to his question. The State asserted that Kidwell's counsel, based on previous proceedings including the first trial, knew that this question would prompt Taulbee's response, and the court took judicial notice "that it was presented at the first trial and [Defense Counsel] did know that if it got into [Taulbee's] motive for why he changed his story is because his mother's own residence was broken into and it did not come out in evidence at the first trial." *Id.* at 427. The court ruled that Taulbee's statement was responsive to the question asked by Kidwell's counsel and allowed the answer, also noting that Kidwell's counsel opened the door to questioning on the subject, and denied the request for a mistrial.

[20]     The parties discussed that the State would ask him in response to the above exchange "why did the burglary of your mom's home change your mind about protecting John Kidwell," and that Taulbee would respond that his mother told him that Shawn and Kidwell perpetrated the burglary. *Id.* at 443. Kidwell's counsel objected to this line of questioning on hearsay grounds, was granted a continuing objection, and requested a mistrial due to "the presentation of evidence that there's implications that he already previously had committed a burglary at . . . his aunt's house." *Id.* at 455. The parties and the court also discussed a limiting instruction. The court overruled his objection and denied his motion for mistrial.

[21]     After this discussion, the jury was brought back into the courtroom and the following exchange occurred:

[Prosecutor]: In your previous testimony today, you've indicated to the jury that you didn't bring up John Kidwell because you were trying to protect your cousin. Is that correct?

Mr. Taulbee: Yes, that's correct.

[Prosecutor]: I would just like you to tell us why did the break-in of your mom's home change your mind about protecting John Kidwell?

Mr. Taulbee: Because I was concerned that my two (2) co-defendants, John and Shawn Kidwell were involved.

*Id.* at 462. Then, the court issued the limiting instruction stating:

The question asked and answered is not evidence of the truth of the matter as stated in the answer and is not to be considered as such and is not to be considered as any evidence that [Kidwell] acted in conformity with the statement provided by the witness but is merely for purpose of the witness' motivation.

*Id.* at 463.

[22] Kidwell acknowledges that, although the objection at trial regarded potential hearsay testimony provided by Taulbee that was extremely prejudicial, "[t]he issue was more properly addressed under Indiana Evidence Rule 404(B)," and that to the extent his objection is inadequate he again relies upon the fundamental error exception. Appellant's Brief at 24. He asserts that evidence of Kidwell's guilt is scant, noting that the fingerprint found on a bottle in his brother's pickup truck is of questionable probative value, and that Shawn

testified at trial that Chris Stevens and not Kidwell was the third participant in the failed robbery despite the risk of adding thirteen years to his prison term for doing so. He argues that the jury "had to have relied" upon Taulbee's testimony to convict him, that Taulbee had serious believability issues, that at his first trial "the jury did not know why Taulbee changed his story," and that the fact the second jury learned of Taulbee's reason for identifying Kidwell and convicted Kidwell is therefore problematic. *Id.* at 25. Specifically, Kidwell suggests that the exchange "might have bolstered Taulbee's shaky credibility," or alternatively the jury may have convicted Kidwell "only because they were convinced he'd acted in conformity with his character," which runs afoul of Ind. Evidence Rule 404(B). *Id.* at 26. He also contends that prejudice is apparent because he was convicted by the second jury, which heard Taulbee's problematic testimony, whereas the first jury did not.

[23] The State argues that otherwise inadmissible evidence may become admissible when the defendant "opens the door" to questioning on that evidence. Appellee's Brief at 28. The State contends that its redirect was brief and actually lessened the risk of prejudice because, while the first statement objected to inferred direct knowledge of Kidwell's participation in burglarizing Taulbee's mother, the redirect exchange showed that in fact Taulbee's "concern" was vague and unsupported. *Id.* at 29. It also asserts that the court's admonishment cured any risk of prejudice. The State further argues that Kidwell's assertions regarding prejudice are unavailing because Shawn's "testimony was a transparent tissue of fabrications and evasions" and that Taulbee's statement to

a detective that he made up the name Chris Stevens was corroborated by the detective's investigation. *Id.* at 31. The State maintains that Shawn's "attempt to contradict his own testimony was inherently implausible and obviously manufactured." *Id.* at 33. The State finally argues that the record does not contain the transcript from the first trial and does not show what evidence the juries heard at the respective trials, that the trial court at the first trial did not make any findings regarding why the jury was unable to come to a consensus verdict, and any attempt to glean a prejudicial effect from the exchanges at issue is mere speculation.

[24] We observe that it was Kidwell's counsel who prompted Taulbee's response that he changed his story "because my mom's house was broken into." Transcript at 425. The record reveals that Kidwell's counsel should have known, based upon deposition testimony and discussions during Kidwell's first trial, that his question and its phrasing would prompt Taulbee to answer in this manner. The invited error doctrine forbids a party to take advantage of an error that he "commits, invites, or which is the natural consequence of [his] own neglect or misconduct." *Nichols v. State*, 55 N.E.3d 854, 862 (Ind. Ct. App. 2016) (quoting *Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)), *reh'g denied*, *cert. denied*, 135 S. Ct. 970, 190 L.Ed.2d 834, *reh'g denied*), *trans. denied*. We conclude that Kidwell invited any error with respect to this portion of Taulbee's testimony.

[25] Having invited such error, we find that any error made in allowing the State to ask its question on redirect and Taulbee's response to be harmless at most and

certainly not falling within the fundamental error exception. We will not reverse an error in the admission of evidence if the error was harmless. *Turner v. State*, 953 N.E.2d 1039, 1058 (Ind. 2011). Errors in the admission of evidence are to be disregarded unless they affect the defendant's substantial rights. *Id.* at 1059. In determining the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable effect on the fact-finder. *Id.* The jury heard Taulbee's reason for changing his testimony as a result of Kidwell's invited error, namely, that his mother's house had been broken into. The implication of Taulbee's statement is that he believed Kidwell was involved in the break-in, and his subsequent statement on redirect did not impact Kidwell's substantial rights. *See Pritchard v. State*, 810 N.E.2d 758, 761 (Ind. Ct. App. 2004) (holding that, even if it could be concluded that it was error for the trial court to admit certain testimony, the error would have been harmless and the defendant was not prejudiced by the admission of the testimony); *see also Cole v. State*, 970 N.E.2d 779, 784 (Ind. Ct. App. 2012) (holding that an error in the admission of evidence does not justify reversal if the evidence is cumulative of other evidence presented at trial).

[26] Further, as acknowledged by Kidwell, his objection to the State's question was based upon hearsay and not Ind. Evidence Rule 404(B). As we have stated, "a party may not present an argument or issue to an appellate court unless the party raised the same argument or issue before the trial court." *Washington v. State*, 840 N.E.2d 873, 880 (Ind. Ct. App. 2006) (quoting *Crafton v. State*, 821 N.E.2d 907, 912 (Ind. Ct. App. 2005)), *trans. denied*.

Waiver notwithstanding, to the extent that Taulbee's statement on redirect might have violated Ind. Evidence Rule 404(B)[2] we note that, immediately following the challenged testimony the court gave its limiting instruction:

> The question asked and answered is not evidence of the truth of the matter as stated in the answer and is not to be considered as such and is not to be considered as any evidence that the defendant acted in conformity with the statement provided by the witness but is merely for purpose of the witness' motivation.

Transcript at 463.

We are obliged to presume "that the jury are [people] of sense, and that they will obey the admonition of the court." *Valdez v. State*, 56 N.E.3d 1244, 1253 (Ind. Ct. App. 2016), *trans. denied*. A timely and accurate admonishment is typically presumed to cure any error in the admission of evidence. *Kirby v. State*, 774 N.E.2d 523, 535 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. Here, the court's admonishment instructed the jury not only to not consider Taulbee's

---

[2] Ind. Evidence Rule 404(B) states as follows:

Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

statement for truth of the matter asserted, but also not to make the "forbidden inference" that Kidwell has engaged in other, uncharged misconduct and the charged conduct was in conformity with the uncharged misconduct. *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997). We find that the court's admonishment cured any potential impropriety contained in Taulbee's statement.

## *Conclusion*

[29] For the foregoing reasons, we affirm Kidwell's convictions for burglary and conspiracy to commit burglary.

[30] Affirmed.

May, J., concurs.

Baker, J., dissents in part, concurs in part, with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Kidwell, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | Court of Appeals Case No. <br> 15A04-1511-CR-1972 |

**Baker, Judge, dissenting in part, concurring in part.**

I concur in the majority's analysis and conclusion regarding prosecutorial vindictiveness. But I must part ways with its analysis of Taulbee's testimony that Kidwell burglarized Taulbee's mother's house. In my view, this testimony is a textbook example of testimony prohibited by Evidence Rule 404(b) and was neither invited nor harmless. Accordingly, I would reverse on this issue and remand for a new trial.

First, Indiana Evidence Rule 404(b)(1) prohibits the admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show

that on a particular occasion the person acted in accordance with the character." However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evidence Rule 404(b)(2). The rule is designed to prevent the jury from assessing a defendant's present guilt on the basis of his propensities—the so called "forbidden inference." *Hicks v. State*, 690 N.E.2d 215, 218-19 (Ind. 1997). The paradigm of inadmissible evidence under Rule 404(b) is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes. *Swanson v. State*, 666 N.E.2d 397, 398 (Ind. 1996). Our Supreme Court has detailed the findings a trial court is required to make before admitting evidence of other acts:

> First, the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act. Second, the court must determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act. And third, the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.

*Camm v. State*, 908 N.E.2d 215, 223 (Ind. 2009) (internal quotes and citations omitted).

[33] The evidence regarding the alleged break-in of Taulbee's mother's house is precisely the type of evidence that Rule 404(b) was designed to keep out of trial, as it fails at least two of the three requirements listed in *Camm*. As for the

second requirement, there was absolutely no proof that the statement was true other than the bald assertion of one of the State's witnesses. This assertion could not have been made with personal knowledge of the facts related, since Taulbee was in prison during the relevant time period, but was instead based entirely on hearsay. And as for the third requirement, the prejudicial effect of the testimony was extremely high, its probative value vanishingly small. The jury was told that Kidwell, on trial for burglary and conspiracy to commit burglary, also burglarized the mother of the State's main witness. This is the epitome of "a crime committed on another day in another place," and had special weight coming from the sole witness testifying against Kidwell. As our Supreme Court has explained, a long line of prior misconduct cases have "cautioned that evidence of prior misconduct offered to bolster a key witness's testimony as to the current charge, although often probative on that point, is also quite prejudicial." *Thompson v. State*, 690 N.E.2d 224, 235 (Ind. 1997). And as Taulbee's testimony was the only evidence linking Kidwell to the crime other than a fingerprint inside his brother's car, the accusation that Kidwell burglarized Taulbee's mother's house was not harmless.

[34] Second, the majority analyzes the issue solely under the fundamental error doctrine, accepting the State's argument that Kidwell did not properly object on Rule 404(b) grounds. While it is certainly true that a claim of trial court error in admitting evidence may not be presented on appeal unless there is a timely objection "stating the specific ground of objection, if the specific ground was not apparent from the context," *Gyamfi v. State*, 15 N.E.3d 1131, 1135 (Ind. Ct.

App. 2014) (citing Ind. Evidence Rule 103(a)(1)), Kidwell *did* alert the trial court to his concern that Taulbee's statement involved impermissible character evidence. Although Kidwell frequently mentioned the doctrine of hearsay, he also argued to the trial court that "the presentation of evidence that there's implications that he already previously had committed a burglary at [Taulbee's] mother's . . . house. That's providing information to the jury. That's extremely high [sic] prejudicial." Tr. p. 455-56. Our Supreme Court has cautioned us not to unrealistically "insist on detailed doctrinal arguments during the exigencies of trial—and indeed, long-winded objections are a poor use of court and jury time. The aim is simply to let the trial judge make an informed decision and prevent the objecting party from switching theories on appeal." *Ward v. State*, 50 N.E.3d 752, 756 (Ind. 2016). That the trial court was adequately informed of the issue is evidenced by its limiting instruction that the statement "is not to be considered as any evidence that [Kidwell] acted in conformity with the statement provided by the witness . . . ." Tr. p. 463.

[35] Third, while I agree that the doctrine of invited error readily applies to Taulbee's first comment, "I changed [my story] because my mom's house was broken into," tr. p. 425, I cannot agree that it applies to the State's follow-up question, "I would just like you to tell us why did the break-in of your mom's house change your mind about protecting John Kidwell?" *Id.* at 462. Defense counsel spent the intervening *forty* pages in the transcript objecting to Taulbee's first statement and to the State's proposed follow up. While Kidwell invited Taulbee's first comment, he certainly did not invite the second.

[36] Nor can I agree with the State's argument that Kidwell opened the door to the State's follow-up question. That doctrine exists to prevent a party from misrepresenting facts and thereby gaining an advantage. *E.g., Jackson v. State*, 728 N.E.2d 147, 151-52 (Ind. 2000) (defendant accused of shooting wife opened the door to evidence of prior battery because he testified that he loved his wife throughout their marriage and left the jury with the impression that he would not intentionally harm someone he loved); *Roberts v. State*, 894 N.E.2d 1018, 1027 (Ind. Ct. App. 2008) (defendant accused of choking victim opened the door to evidence that he had previously choked several other women because he testified that he had only performed chokeholds on men during martial arts training). Such a situation does not exist in this case. Kidwell did not gain an advantage from Taulbee's first comment; indeed, that comment created a substantial risk that the jury would believe that he regularly perpetrates burglaries. And far from lessening the risk of prejudice or averting the forbidden inference, the State's follow-up question greatly increased the prejudice and made it more likely that the jury would infer that Kidwell has a propensity towards burglary. In short, the State did not rebut Taulbee's first comment; it compounded it.

[37] Finally, I do not find the trial court's limiting instruction dispositive. We have previously found limiting instructions insufficient where improperly admitted evidence held great potential to prejudice a jury. *E.g., Greenboam v. State*, 766 N.E.2d 1247, 1255-57 (Ind. Ct. App. 2002) (where defendant was charged with child molestation, and State presented testimony that he had committed other

molestations, we held that "[a]lthough the trial court instructed the jury as to the limited purpose for which the evidence could be considered, we cannot say that the impact of the improperly admitted evidence upon the jurors was significantly lessened. A substantial likelihood exists that the erroneously admitted evidence contributed to the verdict and had an impact upon Greenboam's substantial rights.") (internal citation omitted). In this case, the sole witness testifying against Kidwell, Taulbee, was permitted to accuse Kidwell of burglarizing Taulbee's mother's house. In a trial for burglary, testimony that the defendant burglarizes the mothers of witnesses is extremely inflammatory, and I cannot say that the trial court's limiting instruction sufficiently blunted the impact upon the jurors.

[38] For the foregoing reasons, I respectfully dissent from the majority's analysis of and holding on Taulbee's testimony. In all other aspects, I fully concur with the majority.